## SONIA BRIGHT, Appellant/Plaintiff
## v.
## UNITED CORP., d/b/a PLAZA EXTRA, Appellee/Defendant

S. Ct. Civil No. 2007/80

Supreme Court of the Virgin Islands

July 22, 2008

Vincent Colianni II, Esq., Colianni & Colianni, St. Croix, USVI, *Attorney for Appellant.*

CARL A. BECKSTEDT III, ESQ., Bryant Barnes Moss Beckstedt & Blair, LLP, St. Croix, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; SWAN, *Associate Justice*; and ROSS, *Justice Pro Tem*.[1]

## OPINION OF THE COURT

## (July 22, 2008)

ROSS, J. This appeal concerns a slip and fall accident that took place at the Plaza Extra supermarket in Estate Sion Farm, St. Croix on June 20, 2004. Appellant Sonia Bright ("Bright") filed an action for damages in the Superior Court of the Virgin Islands alleging negligence, bodily injury, medical expenses, lost income and lost future earning capacity. Appellee United Corporation d/b/a Plaza Extra ("Plaza") filed a motion for summary judgment contending that Plaza did not have notice of the spill which may have caused Bright's injuries. The Superior Court granted summary judgment in favor of Plaza, holding that, because Bright failed to provide any evidence that Plaza knew or should have known about the substance on the floor, no reasonable jury could find that Plaza had breached its duty to Bright as a matter of law. The instant appeal followed. On appeal, we must determine whether there were any genuine issues of material fact to preclude the entry of summary judgment. Because we conclude that there is indeed a genuine issue of material fact as to constructive notice, the grant of summary judgment will be vacated and the matter remanded.

## I. FACTUAL AND PROCEDURAL HISTORY

Bright was shopping with her son at Plaza when she fell at the front of the store near the check-out counter. Bright alleges that she slipped on drops of "a thick, pink liquid," causing her to land on her left side and injure her left leg and ankle. Because she was concentrating on shopping, Bright did not see anything on the floor before her fall. She alleges, however, that, while still on the floor, she felt something cold in the area of her left buttock. Bright smelled the substance and described it as

---

[1] Associate Justice Maria M. Cabret was recused from this matter. Justice *Pro Tem* Edgar D. Ross, a retired judge of the Superior Court of the Virgin Islands, sits in her place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

smelling "like a dish liquid." Upon returning to her feet, she claims to have seen the drops for the first time.

After regaining her composure, Bright attempted to continue shopping but was unable to do so because she was experiencing pain. As she was leaving the store about five to eight minutes later, Bright reported the incident to management. However, Bright, whose first language is Spanish, later signed an incident questionnaire written in English in which she indicated that she did not see anything on the floor before or after she fell. During her deposition, Bright testified that she took the manager to the area of the fall and showed him the pink liquid on the floor. Additionally, Bright's son testified that he saw his mother fall, but he did not see the cause of the fall or look at the floor at that time. He testified to seeing the spots on the floor a few minutes later, after returning from another aisle, but did not know whether the spots were there prior to his mother's fall. One of Plaza's baggers, however, testified that he inspected the area immediately following the fall and did not see anything on the floor.

Bright's fall was captured on Plaza's closed-circuit video surveillance system, which is comprised of both a digital hard drive that records only a finite amount of data before reusing itself and a video recorder. The digital footage is automatically recorded over every few weeks unless it is manually copied from the digital hard drive to the video recorder. At his June 2005 deposition, Plaza's manager testified that he examined the footage of Bright's fall immediately after being notified of her fall, the video failed to show anything visible on the floor at the time of the fall. Concluding that Bright "probably tripped on herself," the manager testified that he elected not to review or copy any of the footage prior to or after the fall. He also testified that the store had no set procedure for retaining video footage of slip and fall accidents and that the store simply retained the footage of the actual fall in Bright's particular circumstance.[2]

---

[2] The following colloquy took place during the store manager's deposition:

Q. You saw it on the — and you know you had a video. So I'm asking you, how did you determine only to get the very minute and twenty-two seconds of her fall?

. . .

A. All what we looked for was where the lady — how the lady fell.

Q. (Mr. Colianni) Did you look to see before she fell if someone spilled anything there?

Therefore, the record contains no video evidence indicating when or if someone spilled anything on the floor prior to Bright's fall. The only evidence in the record which indicates length of time is Bright's deposition testimony. When asked if anything indicated how long the substance had been there, she testified that there was a little dust on the drops which indicated to her that it had to be there "for a little while."[3]

A few months after her fall, on September 2, 2004, Bright filed a complaint in the Superior Court. On August 22, 2005, Plaza filed a motion for summary judgment asking the trial court to find that Bright had failed to establish that Plaza had actual or constructive notice of any substance on the floor that may have caused Bright's injuries. Bright opposed the motion arguing she was entitled to a spoliation inference because Plaza had intentionally erased the video footage depicting what had transpired prior to and after her fall. Plaza replied to the opposition by contending

---

A. We really didn't — we didn't take a look at it.

. . .

Q. (Mr. Colianni) Had the company ever extracted portions of videos for other slip-and-falls before this incident?

A. There is, yes. I believe so.

Q. And you would have — and would you personally have seen those, as general manager of the company?

A. Yes, I would have.

Q. And is it the company's procedure to only extract the actual fall itself, or within a minute or so around it?

A. It really depends on the circumstances, I think. There's no set procedure for that, but if there is cause, if somebody said they slipped on a grape or on a lettuce or something, we would go back and try to find out where that lettuce came in, or that grape came in from, or that water came in from or whatever.

(App. at 211-12.)

[3] The following colloquy took place during Bright's deposition:

Q. Right I understand. Did you see any dust on the liquid?

A. For me it have like a little dust, not so — like not so thick, not so much, but it have a little dust. Do you understand? Like it was not a lot, but for me, yes. Have a little dust.

. . .

Q. Okay. Was there anything about the condition of the liquid that suggested to you how long it had been there?

A. Any —

Q. Anything at all about this that gave you an idea as to how long it had been there?

A. Well, the little like dust show me like had to be a little, for a little while. I don't know exactly for how long. I cannot tell you that.

(App. at 55.)

that Bright failed to show that the store had engaged in bad faith, malicious, or fraudulent conduct, which is a prerequisite to the application of a spoliation inference. In a Memorandum Opinion, dated June 11, 2007, the Superior Court granted summary judgment in favor of Plaza, holding that Bright failed to provide sufficient evidence that Plaza knew or should have known of the substance on the floor and failed to demonstrate fraud or deceit that would permit deliberation on the availability of the spoliation inference. Bright timely filed her Notice of Appeal on July 5, 2007.

## II. JURISDICTION AND STANDARD OF REVIEW

As a threshold matter, we have jurisdiction over this appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which vests the Supreme Court with jurisdiction over "all appeals arising from final judgments, final decrees, [and] final orders of the Superior Court." On appeal, this Court exercises plenary review over an order granting summary judgment, and must apply the same test that the trial court should have utilized. *Maduro v. Am. Airlines, Inc.*, Civ. No. 2007/029, 2008 V.I. Supreme LEXIS 24, *7 (V.I. Feb. 28, 2008); *see also Saldana v. Kmart Corp.*, 43 V.I. 361, 260 F.3d 228, 231 (3d Cir. 2001). That test was succinctly set forth by the Third Circuit Court of Appeals in *Saldana*:

> Under Federal Rule of Civil Procedure 56(c), [the] test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. In so deciding, a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor. A court should find for the moving party if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The party opposing summary judgment may not rest upon the mere allegations or denials of the . . . pleading; its response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Such affirmative evidence-regardless of whether it is direct or circumstantial-must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.

*Id.* at 231-232[4] (citations and internal quotation marks omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

## III. DISCUSSION

On appeal, Bright contends that Plaza's destruction of the surveillance video establishes constructive notice because it permits a jury to infer that the video would have shown that the liquid was on the floor long enough for Plaza to have discovered it prior to her fall. According to Bright, the adverse inference created by Plaza's destruction of the tape defeats summary judgment. Plaza contends that Bright is not entitled to a spoliation inference, and that even if she was, common law precludes the use of a spoliation inference to substitute for actual evidence supporting constructive notice. According to Plaza, a spoliation inference is improper where the evidentiary destruction was a matter of routine and was devoid of any fraudulent intent, and the inference cannot be utilized to establish an essential element of a negligence claim.

### A. The Constructive Notice Requirement

■■ The proprietor of a store owes a duty of care to its customers to exercise reasonable care to keep the store in a reasonably safe condition for the contemplated uses thereof. *David v. Pueblo Supermarket of St. Thomas*, 740 F.2d 230, 236 (3d Cir. 1984); RESTATEMENT (SECOND) OF TORTS § 343 (1965).[5] Section 343 of the RESTATEMENT (SECOND) OF TORTS provides that:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) *knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees,* and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

---

[4] The Federal Rules of Civil Procedure are applicable in the Superior Court of the Virgin Island pursuant to SUPER. CT. R. 7.

[5] This case is guided by the Restatement of Torts which governs tort actions in the Virgin Islands in the absence of local laws to the contrary. V.I. CODE ANN. tit. 1 § 4.

(c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343 (1965) (emphasis added).

██ This Court must determine whether, viewing the evidence in the light most favorable to Bright, and guided by the applicable rules of law, a jury could reasonably have imposed liability on Plaza. *David*, 740 F.2d at 233. Bright does not allege that Plaza had actual notice of the spill; therefore, "she would ultimately be required to show that the [substance] was 'on the floor long enough to give [Plaza] constructive notice of this potential unreasonable risk of harm.' " *Saldana*, 260 F.3d at 232 (citing *David*, 740 F.2d at 234 (quoting RESTATEMENT (SECOND) OF TORTS § 343 (1965))). "This burden is met by demonstrating that the floor condition had existed for such a length of time that the storeowner, in the exercise of ordinary care, should have been aware of the condition." *David*, 740 F.2d at 236. According to the Third Circuit Court of Appeals in *Saldana*:

> Circumstantial evidence that a substance was left on the floor for an inordinate period of time can be enough to constitute negligence; where a plaintiff points to such evidence, it is a question of fact for the jury whether, under all the circumstances, the defective condition of the floor existed long enough so that it would have been discovered with the exercise of reasonable care.

*Saldana*, 260 F.3d at 232 (citing *David*, 740 F.2d at 236).

██ Put another way, Bright must point to some evidence that would allow a jury to infer that the liquid was on Plaza's floor for some minimum amount of time before the accident. *Id.* Although both Bright and her son testified during their depositions that they did not see the liquid on the floor prior to Bright's fall, there was indeed some testimonial evidence that the liquid was there prior to the fall. Bright testified that the liquid she observed on the floor after returning to the area with the manager was of the same texture and smell as the liquid that was transferred to her clothing when she fell. More importantly, Bright also testified that the liquid she observed on the floor had dust on it which indicated that it had been there for a while. Hence, Bright did point to evidence that would allow a jury to infer that the liquid had been on the floor for some period of time prior to her fall. While this testimony by

itself may not have been sufficient to create a genuine issue of material fact regarding notice of the spill,[6] the testimony in combination with an inference of spoliation would be sufficient to surmount summary judgment. *See, e.g., Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 110 (2d Cir. 2001) ("The record before us presents a close case, and, as we have recognized elsewhere, at the margin, where the innocent party has produced some (not insubstantial) evidence in support of his claim, the intentional destruction of relevant evidence by the opposing party may push a claim that might not otherwise survive summary judgment over the line." (internal quotations omitted)). Therefore, this Court must determine whether the circumstances of the underlying matter give rise to an inference of spoliation.

## B. Application of the Spoliation Inference

■■ Bright contends that a jury should be allowed to infer from Plaza's destruction of the recorded surveillance footage that the tenor of the evidence in the footage was unfavorable to Plaza's case. According to Bright, therefore, the destruction of the footage showing the area prior to Bright's fall gives rise to an inference of spoliation. The Third Circuit Court of Appeals explained the history of the spoliation inference in *In re Hechinger Inv. Co. of Delaware, Inc.*:

> Since the early 17th century, courts have admitted evidence tending to show that a party destroyed evidence relevant to the dispute being litigated. Such evidence permitted an inference, the "spoliation inference," that the destroyed evidence would have been unfavorable to the position of the offending party.

489 F.3d 568, 579 (3d Cir. 2007) (citing *Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76 (3d Cir. 1994)). The Court went on to note that

> the "key considerations in determining whether such a sanction is appropriate should be: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will

---

[6] *See Saldana*, 260 F.3d at 234 ("Standing alone, the mere presence of dust on [a liquid] *after* [a] fall does not inform any decision as to the amount of time the [substance] was on the floor before the fall.").

avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."

*In re Hechinger Inv. Co. of Delaware, Inc.*, 489 F.3d at 579 (citing *Schmid*, 13 F.3d at 79).

■ Before the spoliation inference can be applied "it is essential that the evidence in question be within the spoliator's possession or control," and "it must appear that there has been an actual suppression or withholding of evidence." *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 96 (3d Cir. 1983). "Such a presumption or inference arises, however, only when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent." *Gumbs*, 718 F.2d at 96 (citing 29 AM. JUR. 2D *Evidence* § 177) (brackets in original). The rationale supporting the spoliation inference is "nothing more than the common sense observation that a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] than is a party in the same position who does not destroy the [evidence]." *Nation-wide Check Corp. v. Forest Hills Distribs., Inc.*, 692 F.2d 214, 218 (1st Cir. 1982).

■ There is no dispute in this matter that the recorded surveillance footage was at all times within the exclusive possession and control of Plaza. The parties dispute, however, whether there was an actual suppression or withholding of evidence.[7] Bright argues that Plaza intentionally destroyed the recorded surveillance footage in order to conceal evidence which was unfavorable to Plaza. Plaza argues that as a

---

[7] Courts within the Third Circuit have split over whether the language "actual suppression or withholding" requires that the evidence be destroyed with fraudulent intent. *See Bright v. United Corp., d/b/a Plaza Extra*, 48 V.I. 308, 314 (V.I. Super. 2007) (collecting cases). We find, however, that this question was settled in *Gumbs*. Although *Gumbs* was ultimately resolved on the "possession or control" prong of the spoliation test, the court clearly quoted from volume 29, section 177 of the second edition of *American Jurisprudence* on *Evidence*, which requires that the evidence be destroyed with fraudulent intent. *See Gumbs*, 718 F.2d at 96. The *Brewer* court affirmed this requirement twelve years later. *See Brewer*, 72 F.3d at 334 (court again quoted from *American Jurisprudence* and held that district court did not err in failing to find fraudulent intent). Therefore, we agree with the trial court's interpretation of "actual suppression or withholding."

regular course of business, the store only maintains the relevant footage of any recorded fall. Therefore, according to Plaza, the failure to retain footage of the time preceding and following the fall was neither fraudulent nor intentional. The trial court found that "Bright offer[ed] no evidence that Plaza . . . attempted to perpetrate a fraud or that Plaza's conduct was anything other than a matter of routine." (App. at 12-13.) The evidence, however, belies the trial court's determination.

During his deposition, Plaza's manager testified that he retained only the portion of the surveillance footage which captured Bright's fall. (App. 211-12.) The manager's conscious and intentional choice not to review or retain the recorded footage prior to or after the fall resulted in the destruction of relevant evidence. The Third Circuit Court of Appeals has established general principles concerning the inferences to be drawn from the destruction of evidence:

> When the contents of a [piece of evidence is] relevant to an issue in a case, the trier of fact generally may receive the fact of the [evidence's] nonproduction or destruction as evidence that the party that has prevented production did so out of well-founded fear that the contents would harm him.

*Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) (citing *Gumbs*, 718 F.2d at 96; *U.S. v. Cherkasky Meat Co.*, 259 F.2d 89 (3d Cir. 1958)). The Second Circuit Court of Appeals has succinctly set forth a useful guideline for determining whether evidence should be retained:

> Such an obligation usually arises when a "party has notice that the evidence is relevant to litigation . . . but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation."

*Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) (citing *Kronisch v. U.S.*, 150 F.3d 112, 126 (2d Cir. 1998). In the underlying matter, Plaza's manager certainly should have anticipated that Bright's accident, for which she filed a formal incident report, could lead to litigation. Accordingly, the manager was obligated to retain the recorded surveillance footage surrounding the fall.

Plaza contends that the portion of the recorded surveillance footage retained was in accordance with Plaza's routine practice of retaining

recorded footage of slip and fall accidents. Plaza cites to *Brewer* in order to support its proposition that "[n]o unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Brewer*, 72 F.3d at 334. The underlying matter, however, is distinguishable from *Brewer*. In *Brewer*, the Third Circuit Court of Appeals, found that the evidence in question was not destroyed intentionally but, rather, was lost as the result of the death of counsel. *Id.* at 334. The underlying matter is also distinguishable from *Gumbs,* another case relied upon by Plaza. In *Gumbs,* the Third Circuit Court of Appeals found that the plaintiff did not have control over the evidence in question, and that there was no evidence in the record that the plaintiff willfully permitted the evidence to be lost or destroyed. *Gumbs*, 72 F. 3d at 97. In the underlying action, it is clear that Plaza exercised exclusive control over the recorded surveillance footage, and it is evident that the destruction of the footage was intentional.

We find this case to be very analogous to *Stevenson v. Union Pacific R.R. Co.*, 354 F.3d 739 (8th Cir. 2004). In analyzing a routine document retention policy, the Eighth Circuit Court of Appeals applied the *Gumbs* test and held that the trial court did not abuse its discretion in permitting a spoliation inference as a sanction for the defendant's pre-litigation destruction of a voice recording. *Id.* at 747-48. Similar to Plaza, the *Stevenson* defendant learned of the accident shortly after it occurred and began his investigation immediately thereafter, but failed to take the steps necessary to preserve the recorded evidence. Also like Plaza, the *Stevenson* defendant had previously been involved in several accidents and knew that such recorded evidence would be relevant to any potential litigation.[8] Additionally, Bright, like the *Stevenson* plaintiff, was prejudiced by the destruction of the evidence because there is virtually no other evidence establishing the dispositive issue. In concluding that

---

[8] Remarkably, in another case currently before this Court, Plaza's management applied a different procedure in determining what portion of a recorded slip and fall accident to retain. In *Williams v. Plaza Extra*, S. Ct. Civ. No. 2007/118, 2008 V.I. Supreme LEXIS 9 (V.I. July 10, 2008), where the recorded surveillance footage appeared to vindicate Plaza, management retained a large portion of the footage, including footage from depicting a custodian cleaning the area twelve minutes prior to the fall and several minutes of footage after the fall. The fall in *Williams* occurred in the same store on April 8, 2002, nearly two years before the fall at issue in this case.

fraudulent intent was present, the Eighth Circuit Court of Appeals recognized that the case "tests the limits of what [the court is] able to uphold as a bad faith determination." *Id.* Nevertheless, the particular circumstances present in that case, which were similar to those present in the case before this Court, warranted a spoliation inference.

■■■ After reviewing the footage, Plaza's manager retained only the portion of the footage which he believed to be relevant, purportedly in accordance with the store's routine practice. It is clear, however, that Plaza's routine practice regarding the destruction of surveillance footage capturing slip and fall accidents is flawed. Store managers should retain recorded footage of the area in which an accident occurred both prior to and following the accident. Obviously, such footage is likely to provide relevant and valuable evidence regarding the cause or timing of a spill resulting in a slip and fall accident. It is certainly not within the discretion of a store manager to determine what portion of the available recorded surveillance footage is relevant to anticipated litigation. *See generally Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th Cir. 2005) ("[Trial] courts have broad discretion in determining relevancy for discovery purposes.") (citation omitted); *see also Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1213 (3d. Cir. 1984) ("questions concerning the scope of discovery are among those matters which should be almost exclusively committed to the sound discretion of the [trial] court"). To allow store managers unbridled discretion to determine what footage to retain would encourage the destruction of relevant evidence by allowing managers to destroy unfavorable footage under the pretext of routine practice.[9] While this Court does not find any statutory or case law indicating precisely what portion of surveillance footage capturing a slip

---

[9] This would place a virtually impossible burden on the party damaged by the destruction of the evidence. As the Supreme Court of Mississippi aptly stated (under a negligence theory):

> Requiring an innocent litigant to prove fraudulent intent on the part of the spoliator would result in placing too onerous a burden on the aggrieved party. To hold otherwise would encourage parties with weak cases to "inadvertently" lose particularly damning evidence and then manufacture "innocent" explanations for the loss. In this way, the spoliator could essentially destroy evidence and then require the innocent party to prove fraudulent intent before the destruction of the evidence could be used against it.

*Thomas v. Isle of Capri Casino*, 781 So. 2d 125, 133 (Miss. 2001). As previously indicated, the requirement to prove fraudulent intent is required by *Gumbs,* but the difficulty confronting the innocent party in these spoliation cases is nevertheless noteworthy.

and fall accident should be retained, common sense dictates the retention of comprehensive surveillance footage of any accident, including a reasonable period of time preceding and following the accident.

We conclude that Plaza's destruction of the recorded surveillance footage prior to and after the fall indicates Plaza's bad faith and fraudulent intent to suppress the truth. At his deposition, the store manager testified that the store's general policy was to examine the video surveillance of slip and fall to determine how the foreign substance arrived on the floor. (App. at 212.) In this case, however, Plaza either failed to follow its general policy or Plaza did review the footage and determined that the footage was harmful to its case. Given the importance of determining how and when a foreign substance causing a slip and fall originated, it is unlikely that any reasonable business manager would fail to evaluate the portion of the video surveillance preceding the slip and fall. Therefore, this Court finds that the failure of the Plaza's manager to retain the recorded surveillance footage prior to and after Bright's fall shocks the conscience of the court and creates a presumption of fraud. *U.S. v. Tabor Court Realty Corp.*, 943 F.2d 335, 344-45 (3d Cir. 1991) (finding that conduct must be "so grossly inadequate as to shock the conscience of the court and raise a presumption of fraud, unfairness or mistake") (internal quotations omitted); *see also In re Stanley Engineering Corp.*, 164 F.2d 316, 318 (3d Cir. 1947). We are not satisfied that the store manager acted without bad faith or fraudulent intent in destroying relevant evidence which was perhaps unfavorable to Plaza. Therefore, we hold that Plaza both intentionally and fraudulently destroyed relevant evidence.

The Second Circuit Court of Appeals has observed that "[i]n borderline cases, an inference of spoliation, in combination with 'some (not insubstantial) evidence' for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment." *Byrnie*, 243 F.3d at 107 (citing *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998)). There is no precise formula, however, to quantify the amount of evidence necessary to support a spoliation inference:

> Certainly, the level of proof that will suffice to support an inference in favor of the innocent party on a particular issue must be less than the amount that would suffice to survive summary judgment on that issue. Otherwise, innocent parties meant to benefit from the adverse infer-

ence against offending parties would receive no benefit at all, having been deprived of evidence that may have been crucial to making their case, and yet being held to precisely the same standard of proof before they may present their case to a jury.

*Kronisch*, 150 F.3d at 128. Moreover, there is a preference in this jurisdiction "that cases be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted). As discussed above, there was circumstantial evidence that the liquid had been on the floor long enough for Plaza to have had constructive notice of it. Drawing all factual inferences in Bright's favor, as the summary judgment rule requires, her testimony regarding dust on the liquid, together with an inference of spoliation, is sufficient evidence to create a genuine issue of material fact with regard to Plaza's notice of the spill.

 Plaza's intentional failure to preserve the recorded surveillance footage preceding and following the accident was extremely prejudicial to Bright. The destroyed footage was perhaps the only evidence upon which Bright could rely to prove that Plaza had notice of the spill. *See David*, 740 F.2d at 233-34 (noting that "[s]lip and fall cases involving foreign substances on the floors of grocery markets present the plaintiffs with a difficult task of proof"). Therefore, we hold that the trier of fact should be permitted, although not required, to apply an inference of spoliation in this case. This Court can conceive no other sanction that would avoid substantial unfairness to Bright. Moreover, the spoliation inference is particularly appropriate in order to deter similar conduct by Plaza and other businesses in the future.

## III. CONCLUSION

The procedure employed by Plaza in determining which portion of the recorded surveillance footage to preserve was flawed. Viewing the record before the trial court when ruling on the summary judgment motion, we find sufficient circumstantial evidence, when combined with an inference of spoliation, to permit a reasonable trier to fact to conclude that Plaza had constructive notice of the alleged pink liquid. A reasonable trier of fact could, in applying the doctrine of spoliation, infer that the destroyed portions of the video footage would have shown evidence that was harmful to Plaza. Whether a jury would actually draw such an inference is a matter left for trial. Under the circumstances, the alleged dust on the

liquid, together with the spoliation inference, creates a genuine issue of material fact as to the amount of time the liquid was on the floor and whether Plaza had sufficient notice of its presence. Accordingly, the Superior Court order granting summary judgment is vacated, and the matter is remanded for reinstatement on the trial calendar.