**VELMA SAMUEL, Appellant/Plaintiff**

**v.**

**UNITED CORPORATION d/b/a PLAZA EXTRA, Appellee/Defendant**

S. Ct. Civil No. 2015-0026

Supreme Court of the Virgin Islands

May 2, 2016

LEE J. ROHN, ESQ., RHEA R. LAWRENCE, ESQ., Law Offices of Lee J. Rohn and Associates, LLC, St. Croix, USVI, *Attorney for Appellant.*

CARL A. BECKSTEDT, III, ESQ., Beckstedt & Associates, St. Croix, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(May 2, 2016)

CABRET, *Associate Justice.* Velma Samuel appeals a jury verdict in the Superior Court finding that United Corporation was not liable for a slip-and-fall injury Samuel sustained in the Plaza Extra grocery store on St. Thomas. Because the Superior Court erred in denying Samuel's motion for a spoliation instruction, we reverse and remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Samuel filed her complaint in the Superior Court of the Virgin Islands on August 16, 2012, alleging that she slipped and fell on milk spilled on

the floor of United Corporation's Plaza Extra grocery store on St. Thomas. Her complaint sought damages for medical expenses, loss of income, loss of earning capacity, mental anguish, and pain and suffering.

After discovery, Samuel filed a motion seeking "a spoliation inference as sanctions for [United's] intentional destruction . . . of portions of the video footage" surrounding her fall. This motion argued that the testimony of the store manager revealed that "no effort was made to preserve any more than 10-20 minutes of the before and after video footage of the incident." She further asserted that most of this preserved video showed only what happened after Samuel fell, and only 1 minute and 21 seconds of footage from before the fall was preserved.

In United's opposition, it argued that it was impossible to tell from the video whether there was any foreign substance on the floor, and so regardless of whether more of the video was preserved, it could not have been proof of constructive notice. In a May 21, 2014 order, the Superior Court denied Samuel's motion for a spoliation inference, holding that the preservation of 1 minute and 21 seconds of video before the fall in accordance with the store's video-retention policy was reasonable and did not "give[ ] rise to a presumption of fraud." *Samuel v. United Corp.*, Super. Ct. Civ. No. 457/2012 (STT), 2014 V.I. LEXIS 29, at *5 (V.I. Super. Ct. May 21, 2014) (unpublished).

The Superior Court went on to specifically reject United's argument that the video footage before the fall was not relevant since "even where no visible substance is on the floor in the video, conduct of other customers prior to the accident may allow a reasonable juror to infer that a substance was on the floor for a certain period of time." *Id.* (citing *Bright v. United Corp.*, 50 V.I. 215, 221 (V.I. 2008)). Even though it held that United's preservation of 1 minute and 21 seconds of pre-fall video footage was reasonable, the Superior Court recommended that United preserve "at least a minimum of five (5) minutes of surveillance footage of the area prior to [an] accident" in the future. *Id.*

After this ruling, Samuel moved for the Superior Court to certify the spoliation issue for an immediate interlocutory appeal to this Court under 4 V.I.C. § 33(c), arguing that the order decided a controlling question of law in this case and that an interlocutory appeal was needed because the May 21, 2014 order conflicted with this Court's decision in *Bright*. The Superior Court denied this motion in a March 2, 2015 order, holding that since this Court would review the Superior Court's spoliation ruling for

an abuse of discretion, it was "not a pure question of law that the Supreme Court 'could decide quickly and cleanly without having to study the record.'" *Samuel v. United Corp.*, Super. Ct. Civ. No. 457/2012 (STT), 2015 V.I. LEXIS 17 (V.I. Super. Ct. Mar. 2, 2015) (unpublished) (quoting *Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 677 (7th Cir. 2000)).

While the motion for certification was pending, United moved to exclude the testimony of Samuel's expert witnesses: Dr. James Nelson, a neurological expert; Sheila Justice, a vocational expert; and Richard Moore, an economic expert. The Superior Court excluded Nelson's testimony in part, concluding that "he is not qualified to make recommendations concerning [Samuel's] capacity for future employment because he is not qualified as a vocational expert." *Samuel v. United Corp.*, Super. Ct. Civ. No. 457/2012 (STT), 2015 V.I. LEXIS 66, at *13 (V.I. Super. Ct. Feb. 25, 2015) (unpublished). The Superior Court excluded Justice's testimony in its entirety, holding that her expert testimony was unreliable because it was based on the portion of Nelson's conclusions that was inadmissible. *Samuel v. United Corp.*, Super. Ct. Civ. No. 457/2012 (STT), 2015 WL 3488868, at *3 (V.I. Super. Ct. Feb. 25, 2015) (unpublished). Finally, the Superior Court excluded Moore's testimony in part, holding that he could not testify regarding Samuel's lost earning capacity because his methodology was unreliable since it was based on Justice's inadmissible conclusions. *Samuel v. United Corp.*, Super. Ct. Civ. No. 457/2012 (STT), 2015 WL 3492074, at *2-3 (V.I. Super. Ct. Feb. 25, 2015) (unpublished).

At the pretrial conference, Samuel objected to the empanelment of a 12-person jury, arguing that 4 V.I.C. § 80 required a jury of six in civil trials. The Superior Court ordered briefing on this issue, which United submitted, but Samuel did not. The Superior Court never explicitly ruled on this issue, but empaneled a jury of 12. After a five-day trial beginning on March 2, 2015, the jury found in United's favor, and the Superior Court issued a March 10, 2015 judgment on the jury's finding that United was not negligent. Samuel filed a timely notice of appeal with this Court on March 12, 2015.

## II. JURISDICTION

■ "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court."

4 V.I.C. § 32(a). The Superior Court's March 10, 2015 judgment "dealt with all of the issues in the suit, closed the case, and left nothing to do but execute the judgment." *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 747 (V.I. 2014) (quoting *Rojas v. Two/Morrow Ideas Enters., Inc.*, 53 V.I. 684, 691 (V.I. 2010)) (internal quotation marks omitted). Accordingly, it was a final order under section 32(a) over which this Court may exercise jurisdiction. Additionally, because "[i]t is well established that prior interlocutory orders . . . merge with the final judgment and may be reviewed on appeal from the final order," we also have jurisdiction over the Superior Court's pretrial orders regarding spoliation, certification, and expert testimony. *Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 685 (V.I. 2015) (quoting *In re Estate of George*, 59 V.I. 913, 919 (V.I. 2013)) (internal quotation marks and some alterations omitted).

## III. DISCUSSION

On appeal, Samuel argues that the Superior Court committed three errors requiring reversal: first, denying an instruction allowing the spoliation inference; second, empaneling a 12-person jury; and third, excluding the testimony of her experts. We agree with all three arguments.

### A. Spoliation

In denying her motion for a spoliation inference, the Superior Court noted that this Court ordered a spoliation inference against United Corporation for the same conduct in *Bright*, but nonetheless found that United's "specific conduct in this case does not amount to fraudulent or intentional destruction of relevant evidence such that the Court should apply a spoliation inference." 2014 V.I. LEXIS 29, at *7. The Superior Court found that United's policy of retaining the video footage of a few minutes before and a few minutes after an accident was "within [*Bright*'s] requirement that [United] retain footage for a reasonable period of time preceding and following the accident." *Id.* While United only retained 1 minute and 21 seconds of footage before Samuel fell, the Superior Court held that *Bright* was distinguishable because "it appears that [United] followed its retention policy and saved *some* video surveillance of the area prior to the accident." *Id.* at *8 (emphasis in original).

Samuel argues that the Superior Court erred in failing to grant a spoliation inference because *Bright* is directly on point and the video

footage of the area before she fell was critical to the case since it was the only evidence that could establish how long the milk was on the floor and how long it had been since one of United's employees inspected the area. We review the Superior Court's ruling on a spoliation inference — like all evidentiary rulings — for an abuse of discretion. *Bright*, 50 V.I. at 228; *Malloy v. Reyes*, 61 V.I. 163, 184 (V.I. 2014). We agree with Samuel that *Bright* is directly on point and that the Superior Court erred in failing to grant a spoliation inference.

 In *Bright*, this Court dealt with this exact issue regarding the same defendant. There, United had deleted surveillance footage of a slip and fall that occurred in one of its Plaza Extra stores on St. Croix. 50 V.I. at 225. In holding that the Superior Court should have granted the spoliation inference, this Court held that

> Before the spoliation inference can be applied it is essential that the evidence in question be within the spoliator's possession or control, and it must appear that there has been an actual suppression or withholding of evidence. Such a presumption or inference arises, however, only when the spoliation or destruction of evidence was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent.

*Id.* at 226 (internal citations, quotation marks, and alterations omitted). While the Superior Court held that the video was deleted in accordance with United's video-retention policy and without any fraudulent intent — an argument United again asserts on appeal — we rejected this exact argument in *Bright*. There we noted that

> Plaza's manager retained only the portion of the footage which he believed to be relevant, purportedly in accordance with the store's routine practice. It is clear, however, that Plaza's routine practice regarding the destruction of surveillance footage capturing slip and fall accidents is flawed. Store managers should retain recorded footage of the area in which an accident occurred both prior to and following the accident. Obviously, such footage is likely to provide relevant and valuable evidence regarding the cause or timing of a spill resulting in a slip and fall accident. It is certainly not within the discretion of a store manager to determine what portion of the available recorded surveil-

lance footage is relevant to anticipated litigation. To allow store managers unbridled discretion to determine what footage to retain would encourage the destruction of relevant evidence by allowing managers to destroy unfavorable footage under the pretext of routine practice.

50 V.I. at 229 (internal citations and quotation marks omitted).

Instead, we held that the deletion of the relevant surveillance footage after it was reviewed by the store manager — just as it was in this case — was enough to "indicate[ ] Plaza's bad faith and fraudulent intent to suppress the truth." *Id.* at 230. That same conclusion is made more apparent in this case by the fact that United deleted the surveillance footage even after this Court expressly explained in *Bright* that this conduct warranted a spoliation inference.

As in *Bright*, since there is no evidence in this case of actual notice, the video surveillance footage was the only evidence that would have established whether United had constructive notice of the spill that caused Samuel's fall — either by showing how long the spill had been on the floor, or by showing how long that area of the store had gone without being inspected by a store employee. And while this case is distinguishable in that United retained 1 minute and 21 seconds of footage before Samuel fell — while in *Bright*, United retained none of the pre-fall footage — retaining only 1 minute and 21 seconds of footage unquestionably fails to comply with our holding that United was required to preserve "a reasonable period of time preceding and following the accident." *Id.* at 230.

■ United argues that "a reasonable period of time" is ambiguous and therefore this Court should defer to the Superior Court's finding that 1 minute and 21 seconds was reasonable in this instance. But under any standard, there is no doubt that the Superior Court erred in holding that preserving so little of the pre-fall video was reasonable. The deleted video footage was the only evidence that could have established whether United had constructive notice of the spill, and unless the 1 minute and 21 seconds of video showed the spill occurring — which would constitute strong evidence against a finding of constructive notice — such a short video could not establish whether United had constructive notice of the spill. *Bright*, 50 V.I. at 231 ("The destroyed footage was perhaps the only evidence upon which Bright could rely to prove that Plaza had notice of the spill."); *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 393 (V.I.

2014) (in the absence of actual notice, evidence that the owner should have discovered the danger and taken steps to remedy it can establish constructive notice). Accordingly, the Superior Court erred in holding that United preserved a reasonable portion of the pre-fall surveillance footage. Instead, the Superior Court should have granted Samuel's motion and instructed the jury that it was "permitted, although not required, to apply an inference of spoliation in this case." *Bright*, 50 V.I. at 231.

Despite this error, "[n]o error or defect in any ruling ... by the Superior Court ... is ground for granting relief or reversal on appeal where its probable impact, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 750 (V.I. 2014) (quoting V.I.S.Ct.R. 4(i)). "Whether an evidentiary error implicates a substantial right depends on the likelihood that the error affected the outcome of the case." *Id.* (citation and internal quotation marks omitted).

We cannot conclude here that the error was harmless. Not only did the Superior Court deny the spoliation inference, but it also prohibited Samuel from soliciting any evidence or making any arguments regarding the deletion of the pre-fall surveillance footage. By doing so, the Superior Court allowed United to argue to the jury, essentially without opposition, that Samuel failed to prove that United had notice of the spill and to emphasize its policy of regularly inspecting its floors. This prevents us from concluding that the Superior Court's error was "sufficiently minor so as not to affect [Samuel's] substantial rights." This error prevented Samuel from arguing that the lack of evidence regarding constructive notice was due to United's misconduct in destroying the surveillance footage, rendering her unable to prove all the elements of her cause of action. Because this error seems very likely to have affected the outcome of the case, we must reverse the Superior Court's March 10, 2015 judgment and remand for a new trial.[1]

---

[1] Samuel argues for the first time on appeal that she was entitled to a directed verdict of negligence as a remedy for United's spoliation of evidence. But since she never raised this argument before the Superior Court — instead only moving for the jury to be instructed that it could make a spoliation inference in evaluating the evidence — Samuel's argument that she was entitled to a directed verdict is waived. V.I.S.Ct.R. 4(h). Samuel also argues that the Superior Court erred in refusing to certify the spoliation issue for immediate interlocutory review under 4 V.I.C. § 33(c). This argument is also waived because Samuel cites no authority for the assertion that the Superior Court was required to certify this issue for imme-

## B. Other Issues Raised on Appeal

In addition to her spoliation arguments, Samuel argues that the Superior Court erred in empaneling a 12-member jury when the Virgin Islands Code requires a 6-member jury in civil cases. Samuel also argues that the Superior Court erred in excluding the testimony of three of her experts without conducting a hearing to evaluate whether their testimony satisfied the requirements for expert testimony. Because we reverse due to the Superior Court's failure to grant a spoliation inference, we do not necessarily need to reach these issues. We nevertheless address them as part of this appeal in the interest of judicial economy, since they are very likely to recur on remand during the new trial. *Malloy v. Reyes*, 61 V.I. 163, 181 (V.I. 2014) (citing *Hard Rock Café v. Lee*, 54 V.I. 622, 640 (V.I. 2011)).

### 1. Jury size

Samuel argues that the Superior Court committed structural error in conducting the trial with a 12-member jury as opposed to a 6-member jury as stated in 4 V.I.C. § 80. In its brief before the Superior Court, United relied on 5 V.I.C. § 322, which appears to provide for a 12-member jury, and it asserts on appeal that any error in this regard did not constitute structural error and should be considered waived.

■ The right to a jury trial in a civil suit in the Virgin Islands is guaranteed by section 3 of the Revised Organic Act of 1954, which provides that "the first to ninth amendments" to the United States Constitution "are hereby extended to the Virgin Islands . . . and shall have the same force and effect there as in the United States or in any State of the United States." 48 U.S.C. § 1561. Among these amendments extended to the Virgin Islands is the Seventh Amendment, providing that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. CONST. amend. VII; *see also* 5 V.I.C. § 321 ("The right of trial by jury as declared by the

---

diate appeal. *See Mahabir v. Heirs of George*, 63 V.I. 651, 668 n.9 (V.I. 2015). Further, even if a particular legal issue meets all the requirements for certification, nothing in section 33(c) *requires* the Superior Court to certify the issue for immediate appeal.

Seventh Amendment to the Constitution of the United States shall apply in civil actions in the [Superior Court] of the Virgin Islands, except as otherwise provided by law."). While the Revised Organic Act guarantees the right to a jury trial in all civil cases tried in the Virgin Islands, it does not specify the number of jurors that must be empaneled, and the United States Supreme Court has held that "a jury of six satisfies the Seventh Amendment's guarantee of trial by jury in civil cases." *Colgrove v. Battin*, 413 U.S. 149, 160, 93 S. Ct. 2448, 37 L. Ed. 2d 522 (1973). Thus, the size of the jury that must be empaneled in civil cases tried in the Superior Court of the Virgin Islands is entirely a question of Virgin Islands law.

The Virgin Islands Code gives conflicting answers to this question. Section 322 of title 5 — first enacted as part of the 1921 Codes, and reenacted as part of the 1957 Virgin Islands Code, *see In re L.O.F.*, 62 V.I. 655, 664-65 (V.I. 2015) — provides that "[t]he trial jury in civil actions shall consist of twelve persons, unless the parties consent to a lesser number." On the other hand, section 80 of title 4 — adopted by the Virgin Islands Legislature in 1976 — provides in full that:

> Commencing two years from the effective date of the revision of this chapter in the year 1977, in all cases in which the parties are entitled to a trial by jury and in which a jury trial is properly demanded, the action shall be tried to a jury composed by six members unless the parties agree, with the consent of the court, upon a lesser number provided, however, that in criminal actions involving alleged felonies, the accused shall be entitled to a jury composed of twelve members.

Samuel argues that because section 80 is the later-enacted statute, its enactment implicitly repealed section 322. We agree.

"The first step when interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning. If the statutory language is unambiguous and the statutory scheme is coherent and consistent, no further inquiry is needed." *L.O.F.*, 62 V.I. at 661 (quoting *In re Reynolds*, 60 V.I. 330, 333 (V.I. 2013)). Both statutes are plain and unambiguous: section 322 provides for a 12-member jury in all civil cases, while section 80 provides for a 6-member jury in all cases except for felony criminal trials.

■ This Court has repeatedly emphasized that "repeal by implication is generally disfavored." *Simmonds v. People*, 59 V.I. 480, 499 (V.I. 2013)

(quoting *V.I. Pub. Servs. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 486 (V.I. 2008)) (internal quotation marks omitted). Implicit repeal is therefore "reserved only for those cases where a clear and irreconcilable conflict exists between two enactments." *Id.* But where "the later statute expressly contradicts the original act" in such a manner that it creates an irreconcilable conflict, repeal by implication is appropriate. *McIntosh v. People*, 57 V.I. 669, 685 (V.I. 2012); *Simmonds*, 59 V.I. at 501; *V.I. Public Servs. Comm'n*, 49 V.I. at 486; *Haynes v. Ottley*, 61 V.I. 547, 567-68 (V.I. 2014).

██ Since both section 322 and section 80 are "equally specific" in that they both purport to govern the number of jurors that must be empaneled in civil cases, and do so in a manner that creates an irreconcilable conflict, "the rules of statutory construction dictate that . . . the most recent enactment[ ] controls." *Simmonds*, 59 V.I. at 501 (citations omitted) ("[I]n the case of 'irreconcilable conflict between . . . two acts, the latest legislative expression prevails.' " (quoting 1A NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTES & STATUTORY CONSTRUCTION § 23:9 & n.19 (7th ed. 2012))). Accordingly, because the Legislature adopted section 322 in 1957, and section 80 in 1976, section 80, as the later-enacted statute, implicitly repealed section 322, and the Superior Court was required to empanel a 6-member jury in this case. Thus, the Superior Court erred in empaneling a 12-member jury, and on remand must empanel a 6-member jury as required by 4 V.I.C. § 80.

### 2. *Expert testimony*

Samuel argues that the Superior Court erred in excluding and limiting the testimony of her experts: Nelson, Justice, and Moore. "This Court reviews the Superior Court's evidentiary rulings for an abuse of discretion, unless the court's decision involves application of a legal precept, in which case we exercise plenary review." *Rawlins v. People*, 61 V.I. 593, 606 (V.I. 2014) (citations omitted); *see Alexander v. People*, 60 V.I. 486, 494 (V.I. 2014) ("[T]he admission of expert testimony lies within the discretion of the trial court, and its judgment must not be reversed absent an abuse of discretion." (citing *Westcott v. Crinklaw*, 68 F.3d 1073, 1075 (8th Cir. 1995)).

██ "[E]xpert testimony [must be] rooted in the 'expert's scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue.' " *Malloy*,

61 V.I. at 182 (quoting FED. R. EVID. 702(a)). "To determine if an expert's testimony was based on specialized knowledge, a court must probe whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology can be applied to the facts in issue." *Suarez v. Gov't of the V.I.*, 56 V.I. 754, 761 (V.I. 2012) (citation and internal quotation marks omitted). In order to do so, the Superior Court must assess the qualifications of the expert, the reliability of her methods, and whether her proposed testimony fits the facts of the case in such a way that her testimony will assist the jury in determining an issue of fact. *Hodge*, 62 V.I. at 693.

Nelson, a medical doctor and neurologist, examined Samuel a month after her accident. In his expert report, he concluded that as result of Samuel's fall, she "sustained injuries to her back associated with lumbar strain and sprain . . . . [and] there was excessive stress transmitted to the muscles and ligaments supporting the spine, injuring those structures." His report concluded that this injury "causes nerve root compression and pain" in Samuel's back, requiring treatment with pain medication, muscle relaxants, and physiotherapy. Nelson also concluded that Samuel's fall aggravated a pre-existing neurological problem diagnosed 20 years earlier. In opposing this motion, Samuel moved for the Superior Court to hold a hearing on the admissibility of this testimony and argued that Nelson's conclusions were all based on accepted diagnostic procedures in the medical field.

In moving to exclude Nelson's conclusions from trial, United argued that because Nelson did not preserve the test results that he used to diagnose the pre-existing neurological condition, this conclusion was inadmissible because it could not be independently verified. United also argued that Nelson's conclusion that the fall caused stress-related migraines was inadmissible because it was an unsupported "ipse dixit." Finally, United argued that Nelson could not testify regarding how the fall affected Samuel's ability to work because he is not certified as a vocational expert.

The Superior Court largely agreed, holding that "Nelson did not use methods or procedures of science to determine the extent to which [Samuel's] bulging L4-L5 disc and the affiliated symptoms were aggravated by the slip and fall incident." 2015 V.I. LEXIS 66, at *8. The Superior Court also excluded Nelson's conclusions that Samuel's "neck pain, sleeplessness, and headaches were directly related to the slip and fall

incident" because "[t]here is nothing in his reports or [deposition] testimony that shows how he was able to determine that [Samuel's] neck injury symptoms were causally linked to the slip and fall incident, which occurred two and a half years prior to his 2014 evaluation," and "Nelson performed no standard diagnostic techniques that would help him to causally link the slip and fall incident to [Samuel's] symptoms." *Id.* at *12. Therefore, the court excluded Nelson's testimony regarding Samuel's neck injury and the future medical expenses she would incur to treat that injury. *Id.* at *13.

The Superior Court further excluded Nelson's conclusions regarding Samuel's disability status because "his conclusions would mislead a jury because they imply that [Samuel] was disabled because of the slip and fall incident and do not consider [Samuel's] prior neck and back injuries." *Id.* 2015 V.I. LEXIS 66 at *13. But the Superior Court held that Nelson could testify that "since the date of injury, [Samuel] has noted the onset of left wrist pain, lower back pain, right hip pain and right knee pain" because that conclusion was "reliable because he utilized methods and procedures of science to arrive at his conclusions." *Id.* The Superior Court also excluded the conclusions of Justice and Moore, two other experts offered by Samuel, in part because Justice's conclusions relied on Nelson's excluded testimony, and Moore's proposed testimony relied in part on Justice's excluded testimony. *See* 2015 WL 3488868, at **2-3 (excluding Justice's testimony); 2015 WL 3492074, at **2-3 (excluding Moore's testimony).

On appeal, Samuel argues that the Superior Court erred in excluding this testimony because it did so without conducting a hearing, "precluding Samuel from having a meaningful opportunity to address the bulk of the Superior Court's concerns." As this Court recently explained, where the Superior Court must resolve factual issues in ruling on a motion, "the Superior Court [is required] to hold an evidentiary hearing." *3RC & Co. v. Boynes Trucking Sys., Inc.*, 63 V.I. 544, 558 (V.I. 2015) (citing *Boynes v. Transp. Servs. of St. John, Inc.*, 60 V.I. 453, 465 (V.I. 2014)). "If witnesses are not heard the trial court will be left in the position of preferring one piece of paper to another," and in doing so commits error by failing to "conduct an evidentiary hearing to create a record from which to resolve the disputed issues of fact." *Id.* (citations and alternation omitted).

 This hearing requirement applies with equal force to disputes regarding expert testimony, since "trial courts are required to apply a reliability analysis to an expert's opinion; that opinion is 'reliable' if it is based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.' " *Walker v. Gordon*, 46 Fed. Appx. 691, 694 (3rd Cir. 2002) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994)). This inquiry is necessarily a factual one that requires the Superior Court to probe the factual underpinnings of the expert's conclusions to determine whether the methodology the expert used to reach his conclusions is reliable. *See Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 417 (3d Cir. 1999). By excluding Samuel's proposed expert testimony without conducting a hearing, the Superior Court "failed to 'provide the plaintiffs with sufficient process for defending their evidentiary submissions.' " *Id.* (quoting *Paoli R.R. Yard PCB Litig.*, 35 F.3d at 754); *see Reynolds*, 60 V.I. at 336 (citing *Brunn v. Dowdye*, 59 V.I. 899, 905 (V.I. 2013)).

 Therefore, the Superior Court erred in excluding the testimony of Nelson, Justice, and Moore without conducting a hearing to determine whether their conclusions were based on a reliable methodology, and the Superior Court must do so on remand. *See United States v. Nichols*, 169 F.3d 1255 (10th Cir. 1999) (in reviewing the denial of an evidentiary hearing, the appellate court required "a sufficiently developed record in order to allow a determination of whether the [trial] court properly applied the relevant law" (quoting *United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997)); *accord James v. Faust*, 62 V.I. 554, 559 (V.I. 2015) ("[M]eaningful review [for an abuse of discretion] is not possible where the trial court fails to sufficiently explain its reasoning." (quoting *In re Q.G.*, 60 V.I. 654, 660 (V.I. 2014))) (collecting cases); *Mahabir v. Heirs of George*, 63 V.I. 651, 666 (V.I. 2015) (quoting *Kalloo v. Estate of Small*, 62 V.I. 571, 584 n.11 (V.I. 2015)). We therefore reverse the Superior Court's orders excluding Samuel's proposed expert testimony.

## IV. CONCLUSION

The Superior Court erred in denying Samuel's motion for a spoliation inference at trial since United failed to preserve a reasonable portion of the surveillance footage from before the fall as required by *Bright*. Therefore, we reverse the Superior Court's judgment and remand for a new trial. On remand, the Superior Court must conduct a hearing on the

admissibility of Samuel's experts and hold the trial with a six-member jury as required by 4 V.I.C. § 80.