**FRANCIS EDWARD, Plaintiff**
**v.**
**GENOA INC., KEN BROWN and GEC, LLC, Defendants**

Case No. SX-11-CV-202
Superior Court of the Virgin Islands
Division of St. Croix
January 23, 2017

WILLOCKS, *Superior Court Judge*

## MEMORANDUM OPINION

(January 23, 2017)

**THIS MATTER** came before the Court on Plaintiff Francis Edward's (hereinafter "Plaintiff") motion to substitute liability expert, filed on July 26, 2016 (hereinafter "Motion to Substitute"). Defendant GEC, LLC (hereinafter "GEC") filed an opposition and Plaintiff filed a reply thereafter. Subsequently, per the Court's order,[1] Plaintiff filed a supplemental motion to substitute liability expert on August 25, 2016, and Defendant filed a motion *in limine* to exclude the expert testimony of Doc Mitchell and Terrance Fischer and response to supplemental motion to substitute liability expert on August 29, 2016 (hereinafter "Motion *in Limine*"). Plaintiff filed an opposition thereafter.

## BACKGROUND[2]

In 2011, Plaintiff commenced a lawsuit against Genoa Inc. (hereinafter "Genoa"), Ken Brown (hereinafter "Brown"), and GEC as defendants for a work-related injury Plaintiff sustained on March 8, 2011. Plaintiff

---

[1] On August 22, 2016, the Court entered an order ordering: (1) Plaintiff to file a supplemental brief outlining the legal basis for his motion to substitute liability expert; and (2) Defendant GEC to file a response to Plaintiff's supplemental brief.

[2] This memorandum opinion recites the factual background only to the extent necessary to explain the present issues and the bases of the Court's decision.

appeared to allege a negligence cause of action against Defendants[3] and sought damages along with costs and fees. Thereafter, in an order dated January 17, 2013, the Court dismissed this action with prejudice as to Genoa and Brown pursuant to their stipulation.[4]

On July 26, 2016, Plaintiff filed this instant Motion to Substitute, which was subsequently denied by the Court in an order entered on October 4, 2016. On October 13, 2016, Plaintiff filed a motion for reconsideration with regard to the aforementioned order. On or about January 5, 2017, the Court entered an order whereby the Court, *inter alia*, granted Plaintiff's motion for reconsideration as to the Court's October 4, 2016 order denying Plaintiff's Motion to Substitute, vacated the Court's October 4, 2016 order denying Plaintiff's Motion to Substitute, scheduled an evidentiary hearing to take place on January 19, 2017, and ordered parties to be prepared to address the qualifications of Doc Mitchell and Terrance Fischer as experts and the reliability of the methodology underlying Doc Mitchell's expert report. The Court noted that it will reserve ruling on Plaintiff's Motion to Substitute pending the outcome of the evidentiary hearing.

On January 19, 2017, parties appeared before the Court for the scheduled evidentiary hearing. Terrance Fischer appeared before the Court via video conferencing. Doc Mitchell did not appear due to medical issues. At the evidentiary hearing, the Court heard from Terrance Fischer and parties and took the matter under submission.

---

[3] Plaintiff did not plead any claims by name in his three-page first amended complaint containing 18 paragraphs. The Court has taken a liberal view of the first amended complaint to infer plausible causes of action since "[p]leadings must be construed so as to do justice." FED. R. CIV. P. 8(e). Based on the following paragraph, the Court construed the first amended complaint to allege a negligence cause of action against Defendants:

> 17. Defendant GEC, LLC so controlled the work being done by Genoa and Brown and failed to provide the Plaintiff with the needed equipment among other acts of negligence.
> 18. As a direct and proximate result of the Defendants' negligent acts and omissions, the Plaintiff suffered physical injuries, medical expenses, loss of income, loss of capacity to earn income, mental anguish, pain and suffering and loss of enjoyment of life all of which are expected to continue into the foreseeable future.

[4] On January 9, 2013, Plaintiff and Genoa and Brown filed a stipulation for Plaintiff to dismiss Genoa and Brown with prejudice. Defendant GEC filed a subsequent motion requesting the Court to set aside the dismissal of Genoa and Brown, but ultimately, the Court denied Defendant GEC's motion and did not set aside the dismissal of Genoa and Brown.

## STANDARD OF REVIEW

In *Antilles School, Inc. v. Lembach*, 64 V.I. 400, 415 (V.I. 2016), the Supreme Court of the Virgin Islands (hereinafter "Supreme Court") stated that Federal Rule of Evidence 702 governs the admission of expert testimony in proceedings in the Superior Court of the Virgin Islands. Federal Rule of Evidence 702 (hereinafter "Rule 702") provides:

> Rule 702. Testimony by Expert Witnesses. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

■ The Supreme Court explained that, "[t]o determine if an expert's testimony was based on specialized knowledge, a court must probe whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology can be applied to the facts in issue." *Samuel v. United Corporation*, 64 V.I. 512, 523 (V.I. 2016) (quoting *Suarez v. Gov't of the V.I.*, 56 V.I. 754, 761 (V.I. 2012)) (citation and internal quotation marks omitted). The Supreme Court further explained that, "[i]n order to do so, the Superior Court must assess the qualifications of the expert, the reliability of her methods, and whether her proposed testimony fits the facts of the case in such a way that her testimony will assist the jury in determining an issue of fact." *Samuel*, 64 V.I. at 524.

■ The qualification requirement under Rule 702 mandates that the witness possess specialized expertise. *Virgin Islands Waste Management Auth. v. Bovoni Investments, LLC*, 61 V.I. 355, 369 (V.I. 2014) (citation and internal quotation marks omitted). Moreover, this qualification requirement is interpreted liberally. *Id.* Once a witness is qualified as an expert, the court must then determine whether the expert's opinion is

based on reliable reasoning or methodology under the *Daubert* standard.[5] *Antilles School, Inc.*, 64 V.I. at 420-21 (the Supreme Court recognized that the *Daubert* standard — the standard for admitting expert testimony under Rule 702 established by the Supreme Court of the United States in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) — represents the soundest rule for the Virgin Islands and that it should govern the admission of expert testimony in the U.S. Virgin Islands). To determine whether an expert's opinion is based on reliable reasoning or methodology, the Supreme Court noted that the Supreme Court of the United States "listed several non-exhaustive factors to consider, including whether the opinion can be (and has been) tested, whether the theory or technique has been subjected to peer review and publication, what the known or potential rate of error is, and the existence and maintenance of standards controlling the technique's operation." *Antilles School, Inc.*, 64 V.I. at 416. The court has a gatekeeping duty to ensure that expert witnesses' testimony satisfies Rule 702's requirement. *See Rodriguez v. Rodriguez-Ramos*, 64 V.I. 447, 463 (V.I. 2016); *see also Sickler v. Mandahl Bay Holding*, ST-10-CV-331, 2013 V.I. LEXIS 61, at *8 ("The duty of the court is to act as a 'gatekeeper' and only allow such opinion testimony which will be of assistance to the trier-of-fact.").

## DISCUSSION

In *Edward v. Genoa Inc., et al.*, SX-11-CV-202, 2017 V.I. LEXIS 1, at *7 (Super. Ct. Jan. 5, 2017), the Court stated that "Defendant GEC indicated that it opposed the substitution of Terrance Fischer for Doc Mitchell as Plaintiff's liability expert on two bases: (1) the substitution did not comply with Federal Rule of Civil Procedure 26(a)(2)(D)'s deadline for disclosure of expert testimony and Plaintiff failed to explain any excusable neglect or good cause for the untimeliness; and (2) Terrance Fischer and Doc Mitchell do not qualify as experts and the methodology underlying Doc Mitchell's expert report is unreliable." As to Defendant GEC's second basis, the Court scheduled an evidentiary hearing to address any concerns regarding the qualifications of Terrance

---

[5] The Supreme Court of the United States held in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-51, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999), that the *Daubert* standard applies to expert testimony from non-scientists as well.

Fischer and Doc Mitchell as experts and the methodology underlying Doc Mitchell's expert report. *Id.* As to Defendant GEC's first basis, the Court stated that:

> . . . while it is true that the substitution did not comply with Federal Rule of Civil Procedure 26(a)(2)(D)'s deadline for disclosure of expert testimony as to the original trial date, September 6, 2016,[6] Plaintiff's new expert will not introduce any new opinions or theories. Plaintiff indicated in his supplemental motion to substitute liability expert that "[t]he opinions of [Doc] Mitchell have been accepted and adopted by [Terrance] Fischer and [Terrance] Fischer will limit the scope of his testimony to conclusions which are contained in [Doc] Mitchell's prior report." Terrance Fischer himself also indicated in a statement dated August 15, 2016, that he has "reviewed the file materials in this matter and the report of Doc Mitchell dated October 30, 2013 and adopt his opinions." Thus, the Court does not find the adoption of Doc Mitchell's expert report by Terrance Fischer to be prejudicial to Defendant GEC who has been in possession of Doc Mitchell's expert report since October 31, 2013 and therefore, already know or should know the substance thereof. *See e.g. Park v. Cas Enters., Inc,* 2009 U.S. Dist. LEXIS 108160 (S.D. Cal. 2015) (permitting the plaintiff to substitute a new damages expert, but requiring the new expert to "adopt the initial and rebuttal expert reports in their entirety"); *Roberts ex rel. Johnson v. Galen of Va., Inc.,* 325 F.3d 776, 784 (6th Cir. 2003) (finding no error in district court requiring that the substitute expert to not deviate from the prior expert's conclusions). Moreover, the Court finds "serious health problems" of Doc Mitchell support a finding of good cause for substitution at this late stage of litigation. Furthermore, the scheduled trial date for this matter has since been continued from

---

[6] Federal Rule of Civil Procedure 26(a)(2)(D) provides:

> *(D) Time to Disclose Expert Testimony.* A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:
>
> > (i) at least 90 days before the date set for trial or for the case to be ready for trial; or
> >
> > (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

September 6, 2016 to January 23 2016. With this new trial date, Plaintiff's substitution is in compliance with Federal Rule of Civil Procedure 26(a)(2)(D). *Edward*, 2017 V.I. LEXIS 1, at *7-8.

As such, the only issues before the Court are the qualifications of Doc Mitchell and Terrance Fischer as experts and the reliability of the methodology underlying Doc Mitchell's expert report.

## A. Doc Mitchell

### 1. Qualification as an Expert

Although the Court's order was clear that parties should be prepared to address the qualifications of Doc Mitchell as a liability expert and the reliability of the methodology underlying Doc Mitchell's expert report, neither party made arguments as to Doc Mitchell's qualifications as an expert. Instead, Plaintiff and Defendant GEC relied on their previously submitted briefs.[7] In its Motion *in Limine*, Defendant GEC argued that "[a]lthough Mr. Mitchell and [Mr.] Fischer may appear to be in position of the requisite degrees to allow them to testify this does not change the fact that their opinion is prejudicial and does not meet the requirements of *Daubert* or FRE 702." Defendant GEC further argued that Doc Mitchell is merely a "hired gun" expert. Thus, Defendant GEC argued that Doc Mitchell should not be qualified as an expert. In his opposition, Plaintiff asserted that Doc Mitchell "has extensive experience in the industry and a thorough knowledge of the safety standards."

Doc Mitchell attached a copy of his curriculum vitae to his expert report (hereinafter "CV"). In his CV, Doc Mitchell included: (1) his membership to professional organizations, past and present, including but not limited to: American Society of Heating Refrigeration and Air Conditioning Engineer (Chairman of Education and Training Committee), Refrigeration Service Engineers Society, National Boiler Institute; (2) his licenses and certification, including but not limited to: general contractor (40 years), HVAC contractor (35 years), boiler, pressure vessel & piping contractor (35 years); (3) his teaching experiences, including but not limited to: designed classroom curriculum and taught HVAC and

---

[7] Plaintiff did not make any arguments as to Doc Mitchell's qualification as an expert in his Motion to Substitute. Defendant GEC did not raise this argument in its opposition thereto, but raised it in its Motion *in Limine*.

mechanical code requirement classes for continuing education for State Building and Code enforcement officers, Health Department and numerous other State agency personnel, designed classroom curriculum and taught OSHA code compliance classes, graduate level classes in commercial and industrial heating, cooling, refrigeration, and ventilation; (4) his various experiences as a contractor, including but not limited to: prime contractor construction, mechanical contractor; (5) his commercial inspections and litigation experiences, including a "cross section ranging from small $1,500.00 repair projects to $50,000,000.00 Industrial and Commercial projects"; (6) his education, including but not limited to: Electronic Technology Degree R.E.T.S. Electronic Institute, Instructors Certification National Environmental Systems Association, Western Kentucky University Systems Design and Installation;[8] and (7) his inspections for government agencies as special inspector for code compliance and litigation.

■ Doc Mitchell certainly included in his CV a very extensive list of his education, certifications, and experiences in various fields. However, without the opportunity to question Doc Mitchell, the Court cannot discern whether he has the sufficient knowledge, skill, experience, training or education to qualify as a liability expert in this matter.[9] For example, as part of his education, Doc Mitchell listed in his CV: "Commercial Refrigeration Hobart Corporation," "Commercial Refrigeration Dunn & Bush Corporation," "Industrial Commercial Heating and Cooling Carrier Corporation," "Electrical Apprenticeship," etc. Each of these education experiences, on its face, does not appear to

---

[8] It is unclear what kind of certifications or degrees, if any, were obtained from the institutes, associations, and corporations listed.

[9] For example, at the evidentiary hearing, Terrance Fischer testified: (1) that he is a forensic engineer specializing in accident reconstruction; (2) that a forensic engineer analyzes accidents and injury causing incidents for use in legal services; (3) that he has been a forensic engineer for approximately 22 years; (4) that his background is in biomechanics and in human factors engineering, as well as motor vehicle accident investigation; (5) that he has a Bachelor's degree in human factors engineering and system engineer; (6) that he has a Master's degree in biomechanical trauma; (7) that he has taken relative course work in accident reconstruction, accident investigation, as well as OSHA regulations; (8) that he is certified in human factors engineering; (9) that he is certified in accident reconstruction; and (10) that he is certified as a walkway auditor. These are all factors that are helpful to the Court in determining whether Terrance Fischer has the sufficient knowledge, skill, experience, training or education to qualify as a liability expert in this matter.

contribute to the knowledge, skill, experience, training or education of a liability expert. While it is understandable that Doc Mitchell was unable to appear at the January 19, 2017 evidentiary hearing, the Court cannot and will not forgo its duty as the gatekeeper to ensure that a witness is qualified as an expert to testify under Rule 702. *See Rodriguez*, 64 V.I. at 463; *see also Sickler*, 2013 V.I. LEXIS 61, at \*8. Even under a liberal interpretation of this qualification requirement, based on the information before the Court, the Court does not find Doc Mitchell to possess a specialized expertise. Accordingly, the Court will not qualify Doc Mitchell as an expert and will therefore preclude the admission of his expert report. Although, given the Court's ruling, the Court need not address the reliability of the methodology used by Doc Mitchell to form his opinions in his expert report, for the completeness of the record, the Court will assume *arguendo* that Doc Mitchell is qualified as an expert and determine the reliability of the methodology underlying his expert report.

### 2. Methodology Used to Form Expert Opinions

Assuming *arguendo* that Doc Mitchell is qualified as an expert, the methodology used by Doc Mitchell to form his opinions in his expert report must be found reliable before his opinions can be admitted and adopted by Terrance Fischer, the expert Plaintiff wishes to substitute in place of Doc Mitchell.

In its Motion *in Limine*, Defendant GEC argued that Doc Mitchell's expert report is inadmissible because the methodology underlying Doc Mitchell's expert report is unreliable. More specifically, Defendant GEC argued, *inter alia*, that: (1) "[t]here is no factual or scientific support and the opinion and conclusions are likely to confuse the issues, mislead the jury and waste time under [Federal Rule of Evidence] 403"; (2) the "testimony is not reliable enough for expert admission under [Federal Rule of Evidence] 702" and therefore, it does not assist the trier of fact in this case; and (3) "[t]he failure to address any applicable standards and their willingness to completely ignore those standards and basic fact not only indicate the 'hired gun' nature of their testimony, but their complete lack of reliability in the evaluation of the situation which is the subject of the litigation."

In his opposition, Plaintiff cited to the Supreme Court's ruling in *Antilles School, Inc.* in support of its assertion that Doc Mitchell's expert

opinions are admissible. Plaintiff stated that the "expert report and opinions of Doc Mitchell to which Terrance Fischer had adopted is more than sufficient under the standards articulated by the Virgin Islands Supreme Court in *Antilles School, Inc. v. Lembach*." Plaintiff further stated that, "[l]ike [the expert in *Antilles School, Inc.*], Plaintiff's expert will testify based on his training, experience and knowledge, Defendant [GEC's] conduct violated various safety standards."

■ In *Antilles School, Inc.*, the Supreme Court concluded that the expert's conclusion was based on reliable principles where the expert came to the conclusion in her expert report based on her knowledge of the International Building Code, the National Fire Protection Life Safety Code, the Occupational Safety and Health Administration regulations, the National Safety Council Accident Prevention Manual, and the Encyclopedia of Occupational Health and Safety. 64 V.I. at 422-25. The Supreme Court stated that "[i]t is well established that industry standards are relevant, admissible evidence in ordinary negligence cases, since they are probative of the standard of care." *Id.*, 64 V.I. at 424-25. The Supreme Court further stated that "the fact that Mackay did not cite to specific portions of these codes and standards in her expert report does not provide an alternate basis for the Superior Court's decision to exclude this portion of her testimony." *Id.*, 64 V.I. at 425. "Numerous courts have held that an expert witness's methodology is not unreliable simply because the witness uses generalities rather than citing to specific provisions." *Id.*, 64 V.I. at 425-26. The Supreme Court reasoned that, "had [the defendant] requested a hearing on its motion, it could have cross-examined Mackay to determine the extent of her knowledge, including asking her to pinpoint which specific provisions of these codes supported her claims." *Id.*, 64 V.I. at 426. Furthermore, the Supreme Court pointed out that, "had [the defendant] not filed its motion to exclude any specific references to these standards, Mackay would almost certainly have cited to those authorities during her trial testimony rather than speaking in generalities . . . and been subject to cross-examination." *Id.*, 64 V.I. at 426-27.

■ Here, according to page 1 of Doc Mitchell's expert report, Doc Mitchell reviewed, *inter alia*, "numerous Federal safety standards which included OSHA, Public Health Services, Center for Disease Control and Prevention and the National Institute for Occupational Safety and Health" in preparation for his expert report. From these sources, Doc Mitchell concluded that: (1) "no one on this job site who had any authority

required that safety vests must be worn, which is one of the first safety issues to which a company must comply" (Expert Report, p. 9); (2) Defendant GEC and its General Foreman "failed regularly to utilize the subcontractor's foremen to supervise their own employees/personnel" and "that, in itself, created a serious safety issue" (Expert Report, p. 10); (3) "the fact that the roof was constructed without the steel concrete forms being removed first was a result of bad management in the concrete construction industry" (Expert Report, p. 10); (4) the fact that "men were ordered to remove these steel concrete forms by hand [was] another example of bad management" (Expert Report, p. 10); (5) "[t]he person who ordered these forms to be removed without the use of equipment gave no consideration to the fact that men could very easily be hurt picking up this amount of weight" (Expert Report, p. 10); (6) "[t]hese people who were in charge on this job site were not following any safety issues other than hard hats and safety glasses" (Expert Report, p. 11); (7) "[n]one of their employees had been to any safety training programs" which "in itself is a violation of industry standards" (Expert Report, p. 11); and (8) "[b]ased upon these workers past experience with this foreman, they knew they had to do what they were told to do in order to keep their jobs" (Expert Report, p. 12). As noted above, the Court construed Plaintiff's first amended complaint as asserting a cause of action for negligence. As such, these industry standards Doc Mitchell reviewed in preparation for his expert report are "relevant, admissible evidence . . . since they are probative of the standard of care." *See Antilles School, Inc.*, 64 V.I. at 424-25. Furthermore, as the Supreme Court specifically pointed out in *Antilles School, Inc.*, the fact that Doc Mitchell did not cite to specific portions of these codes and standards in his expert report does not make it unreliable. However, the disputed expert testimony in this matter is unquestionably distinguishable from the disputed expert testimony in *Antilles School, Inc.* in one important aspect — unlike the expert in *Antilles School, Inc.*, Doc Mitchell was not available to testify at the January 19, 2017 evidentiary hearing and will not be available to testify at trial. Thus, Defendant GEC did not and will not have the opportunity to cross-examine Doc Mitchell to "determine the extent of his knowledge, including asking him to pinpoint which specific provisions of these codes supported his claims." *See Antilles School, Inc.*, 64 V.I. at 426. While Defendant GEC had the opportunity to cross-examine Terrance Fischer, the expert Plaintiff wishes to substitute in place

of Doc Mitchell, Terrance Fischer could not testify to the extent of Doc Mitchell's knowledge and could not pinpoint which specific provisions of these codes Doc Mitchell used to support Doc Mitchell's claims. Terrance Fischer could only testify to the extent of his knowledge and to his own interpretation and understanding of Doc Mitchell's expert report. Here, Plaintiff is essentially asking the Court to take Terrance Fischer's interpretation and understanding of Doc Mitchell's expert report — assuming Terrance Fischer is qualified as an expert — and make a determination that Doc Mitchell's opinions in Doc Mitchell's expert report are based on reliable reasoning or methodology under the *Daubert* standard. The Court cannot take such a leap of faith that Terrance Fischer's interpretation and understanding of Doc Mitchell's expert report is what Doc Mitchell actually meant to state in his report. For example, Doc Mitchell concluded that "[n]one of their employees had been to any safety training programs" which "in itself is a violation of industry standards." How would Terrance Fischer know for a fact, aside from asking Doc Mitchell himself, which industry standards Doc Mitchell was referring to? Terrance Fischer can only infer which industry standards Doc Mitchell was referring to based on Terrance Fischer's own interpretation and understanding. In fact, at the January 19, 2017 evidentiary hearing, Terrance Fischer admitted that he is testifying to his interpretation and his understanding of what Doc Mitchell meant to say in the expert report.

Furthermore, the Court made it very clear in *Edward* that if "the Court finds that Terrance Fischer and Doc Mitchell both qualify as experts and the methodology underlying Doc Mitchell's expert report is reliable, the Court will grant Plaintiff's motion to substitute liability expert and permit Plaintiff to substitute Terrance Fischer for Doc Mitchell as Plaintiff's liability expert" but "Terrance Fischer is limited, however, to the subject matter and theories already espoused by Doc Mitchell and may not espouse any other opinions or theories not found in Doc Mitchell's expert report." 2017 V.I. LEXIS 1, at *8. Thus, it is improper for Terrance Fischer to supplement Doc Mitchell's expert report with his own interpretation and understanding. It also contradicts Plaintiff's assertion that his new expert will not introduce any new opinions or theories and that "[t]he opinions of [Doc] Mitchell have been accepted and adopted by [Terrance] Fischer and [Terrance] Fischer will limit the scope of his testimony to conclusions which are contained in [Doc] Mitchell's prior

report." The Court believes that permitting Plaintiff to introduce unexpected new expert opinions under the guise of substituting a new expert would end up promoting gamesmanship in litigation where a party dissatisfied with his expert's opinion could simply supplement with new expert opinion by substituting a new expert.

Again, while it is understandable that Doc Mitchell was unable to appear at the January 19, 2017 evidentiary hearing, the Court cannot and will not forego its duty as the gatekeeper to ensure that the expert witness's testimony satisfies Rule 702's requirement. *See Rodriguez*, 64 V.I. at 463; *see also Sickler*, 2013 V.I. LEXIS 61, at *8. Without Doc Mitchell being available to testify, the Court cannot determine that his opinions are based on sufficient facts or data, or the product of reliable principles and methods, or that he has reliably applied the principles and methods to the facts of the case. *See* FED. R. EVID. 702. Without Doc Mitchell being available to testify, the Court finds that Doc Mitchell's opinions in his expert report will not help the trier of fact to understand the evidence or to determine a fact in issue. *Id.* Accordingly, the Court will preclude the admission of Doc Mitchell's expert report. Given the Court's ruling, the Court need not address the qualification of Terrance Fischer as an expert.

The Court must note that, at the January 19, 2017 evidentiary hearing, in support of his assertion that Doc Mitchell and Terrance Fischer's expert testimony is admissible, Plaintiff pointed to the Supreme Court's reversal of the Superior Court's decision to exclude the testimony of the plaintiff's experts in *Samuel v. United Corporation*, and noted that the Supreme Court set forth guidelines to be used in excluding expert testimony. In *Samuel*, the Supreme Court found that "the Superior Court erred in excluding the testimony of [the plaintiff's expert] without conducting a hearing to determine whether their conclusions were based on a reliable methodology" and ordered the Superior Court to conduct an evidentiary hearing on remand. 64 V.I. at 526. This Court, consistent with the Supreme Court's holding in *Samuel*, held an evidentiary hearing and provided Plaintiff with sufficient process for defending his evidentiary submissions. *See id.* ("By excluding Samuel's proposed expert testimony without conducting a hearing, the Superior Court failed to provide the plaintiffs with sufficient process for defending their evidentiary submissions.") (citations and internal quotation marks omitted).

## CONCLUSION

For the reasons stated above, the Court will deny Plaintiff's Motion to Substitute and grant Defendant GEC's Motion *in Limine*. An order consistent with this memorandum opinion will follow.