

**FILED**
April 20, 2022 11:01 AM
SX-2006-CV-00231
TAMARA CHARLES
CLERK OF THE COURT

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

KADAR MOHANSINGH,

                      **Plaintiff**

    v.

HESS CORPORATION and
HESS OIL VIRGIN ISLANDS
CORPORATION,

                 **Defendants.**

Case No. SX-2006-CV-231
Complex Litigation Division

(Grouped under SX-15-MC-198)

**Cite as: 2022 VI Super 44U**

**MEMORANDUM OPINION**
(Filed April 19, 2022)

Andrews, Jr., *Judge*

## INTRODUCTION

¶1    Plaintiff brings this action for damages against defendant oil refinery companies. He alleges, during their employment, Defendants negligently exposed him to toxic substances which caused him to suffer disease and illnesses. Defendants' Hess Corporation and Hess Oil Virgin Islands Corporation now move this Court to exclude expert testimony by Plaintiff's doctor at the trial of this matter. They claim his analysis is based on assumptions instead of facts and is inconsistent with legal principles governing diagnostic procedures. Plaintiff contends otherwise. For the reasons mentioned below, this Court will deny Defendants' motion to exclude.

## PROCEDURAL BACKGROUND

¶2    On March 14, 2006, Plaintiff Kadar Mohansingh commenced this action for negligence and other tort claims against defendants Hess Corporation (Hess), Hess Oil Virgin Islands Corporation (HOVIC), and Litwin Corporation.[1]  On March 18, 2022, Defendants Hess and HOVIC filed the instant Motion in Limine to Exclude the Testimony of Plaintiff's Expert, Dr. Christopher Leigh John and any evidence related thereto.   Defendants requested a Daubert hearing on their motion. Mot In Limine to Exclude, p 12.   Plaintiff opposed the motion on March 25, 2022.   Defendants filed their reply on April 1, 2022.   No hearing was held on the motion.[2]

## RELEVANT FACTS

¶3    Plaintiff alleged, during his employment with defendant oil refinery companies, he was continuously exposed to asbestos products and other toxic substances due to Defendants' negligence. Complaint, p 2.   As a result of such exposure, plaintiff further alleged, he developed an asbestos-related disease. Complaint, p 3.   To support his claim, Plaintiff retained the services of Jerome E. Spear, a Certified Industrial Hygienist, Certified Safety Professional and Fellow of

---

1 Litwin Corporation has since been dismissed from this action.
2 Since the Court is not excluding the challenged expert testimony, no hearing is required. Samuel v. United Corp., 64 V.I. 512, 526 (V.I. 2016).

the American Industrial Hygiene Association. Mot in Limine, Ex. A (Spear's

Report). Based on his review of Plaintiff's work history, occupational activities,

evidence of exposure, documents and materials in Plaintiff's case and relevant

scientific literature and information generally relied upon by industrial hygienists,

Spear made the following conclusions within a reasonable degree of scientific

certainty:

1) Plaintiff was exposed to asbestos when helping to clean-up the insulation debris in the terminal area of the HOVIC refinery as a result of Hurricane Hugo in 1989.

2) Plaintiff had bystander exposure to asbestos from being in close proximity to other workers sawing and grinding asbestos cement pipe in the terminal area of the HOVIC refinery

3) Plaintiff had bystander exposure to asbestos from being in close proximity to insulators removing, installing, and/or otherwise disturbing asbestos-containing thermal system insulation (TSI) in the terminal of the HOVIC refinery.

4) Plaintiff had direct exposure to asbestos when replacing asbestos-containing gaskets and packing in the terminal area.

5) Plaintiff's direct and bystander exposure likely resulted in contamination to his clothing. Secondary exposure from wearing contaminated clothing contributed to Plaintiff's overall asbestos exposure.

6) Plaintiff was not adequately warned of the dangers of asbestos exposure, including its ability to cause an asbestos-related disease.

7) Plaintiff's exposure to asbestos from TSI, asbestos cement pipe, gaskets and packing were significant sources of his exposure. Asbestos released from these products increased his dose, which in turn,

significantly increased his risk of contracting an asbestos-related disease.

Id. at 1, 64.

## LEGAL STANDARD

¶4    Defendants' motion requires this Court to determine the admissibility of proposed expert testimony.   The admissibility of expert testimony in the Virgin Islands is governed by the Virgin Islands Rules of Evidence which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

V.I.R.E. 702.   In Daubert v. Merrell Dow Pharmaceuticals, Inc., the United States Supreme Court established the standard for determining admissibility of expert testimony under identical Federal Rule of Evidence 702.   It instructed that:

> the trial judge must determine at the outset … whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that

reasoning or methodology properly can be applied to the facts in issue.

509 U.S. 579, 592-93 (1993). To determine whether proposed testimony is based on reliable reasoning or methodology the Supreme Court listed the following non-exhaustive factors:

    a. whether the opinion can be (and has been) tested;

    b. whether the theory or technique has been subjected to peer review and publication;

    c. what the known or potential rate of error is; and

    d. the existence and maintenance of standards controlling the technique's operation.

Id. at 593-94. In 2016, the Virgin Islands Supreme Court concluded that "the Daubert standard represents the soundest rule for the Virgin Islands." Antilles School, Inc. v. Lembach, 64 V.I. 400, 420 (V.I. 2016). They adopted it as "the more liberal standard" that should govern admission of expert testimony in the Virgin Islands. Id. at 421. Hence, courts construe the rule broadly in favor of admissibility.

When faced with a motion to admit or exclude expert testimony, the trial judge is tasked with ensuring that the proffered expert testimony rests on a reliable foundation and is relevant to the task at hand. Daubert, 509 U.S. at 597. In order for expert testimony to be admissible, three requirements must be met:

1) the expert must be qualified;

2) the expert's opinion must be derived from a reliable process or technique; and

3) the testimony must assist the trier of fact, that is, it must "fit" the facts of the case.

Gerald v. R.J. Reynolds Tobacco Co., No. ST-10-CV-631, 692, 2018 V.I. LEXIS 119, at *1-2 (V.I. Super. Ct. June 12, 2018 (quoting In re Catalyst Litigation, 55 V.I. 30 (Super. Ct. 2010). The proponent of expert testimony bears the burden of establishing admissibility requirements by a preponderance of the evidence. Daubert, 509 U.S. at 593, n. 10. Whether to conduct a hearing on a Daubert issue lies within the court's discretion and no hearing is required if the court decides not to limit or exclude the expert testimony. Samuel v. United Corp., 64 V.I. 512, 526 (V.I. 2016); Schrader v. Juan F. Luis Hosp. & Med. Ctr., No. SX-12-CV-066, at *8-9, 2016 V.I. LEXIS 236 (Super. Ct. Oct. 6, 2016).

The proposed testimony must qualify as scientific knowledge to meet the standard of evidentiary reliability. Thus, "proposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. at 590. Such testimony should hence be admitted "as long as the expert has 'good grounds' to hold a particular opinion." Lee v. United Corp., No. ST-98-CV-598, at *6, 2010 V.I. LEXIS 58, (Super. Ct. Aug. 17, 2010). The Court need

not conclude that the expert's testimony is correct. Instead, "the focus, of course, must be solely on principles and methodology, not on the conclusions they generate." Daubert, 509 U.S. at 595. In this regard, "the judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co. v Carmichael, 119 S. Ct. 1167, 1176 (1999).

## LEGAL ANALYSIS

¶5 Defendants seek to exclude testimony of Christopher L. John, M.D. as well as all evidence that refers to his testimony or analysis. They challenge his testimony on two grounds: 1) his opinions are based on unsupported facts regarding Plaintiff's asbestos exposure; and 2) Dr. John failed to complete a differential diagnosis or perform any evaluation to rule out other possible causes of Plaintiff's symptoms, hence his analysis is inconsistent with legal principles governing diagnostic procedures. Mot. *In Limine* to Exclude, pp 1 - 2.

A. Dr. John's Conclusions Were Based on Adequate Data.

Defendants assert that Dr. John's report is not based on adequate data because:

    a. The report depends on Plaintiff's exposure history derived solely from Plaintiff's own description of periodic exposure to what may have been asbestos.

b. Dr. John failed to verify whether Plaintiff in fact experienced exposure over a prolonged period of time and whether Plaintiff was in fairly close contact to asbestos.

c. Dr. John failed to consider the fact that Plaintiff never told his doctors he believed he had been exposed to asbestos.

d. Dr. John's analysis was based on unsubstantiated assumptions about Plaintiff's exposure.

e. Dr. John could not confirm that the dust to which Plaintiff was exposed contained asbestos.

f. Dr. John failed to include any analysis of dosage (level of exposure) in his analysis.

Id. pp 5 – 7.   Each of these challenges attack the quality, reliability, and sufficiency of asbestos exposure evidence.   In this regard, the evidence Dr. John relied upon include:

a. Plaintiff's statements that he worked with asbestos piping, asbestos insulation and dust created by himself, his supervised workers and other refinery workers near him removing and replacing insulation with no appropriate safety measures taken.

b. Plaintiff's statements that he was exposed to Sorbant C used to control oil spills, which was spread in the form of a powder creating clouds of dust.

c. Report by Jerome Spear.

Ex. A Mot. *In Limine* to Exclude (Dr. John's 2/22/22 Report).   Based on these exposures, Dr. John concluded that Plaintiff "was subject to significant exposure to asbestos dust and materials at the Hess refinery over a prolonged period of

time." Id.    In a February 28, 2022, report, Dr. John referenced further details

regarding Plaintiff's exposure as a result of an interview:

a. Plaintiff assisted in connecting hoses, cleaning asbestos pipes and gaskets, and repairing asbestos insulation on piping in addition to replacing gaskets.

b. Masks were occasionally provided, but not continuously so.

c. Between 1970 through 1981 Plaintiff worked at the docks and on pipes in tank fields, known as "The Terminal."

d. After being promoted to leadman he was more actively involved in the actual repair of pipes and gaskets and was exposed to clouds of asbestos dust.

e. His work included sandblasting, metal grinding, and welding flux exposure.   Occasionally disposable cloth masks were used.

f. Plaintiff engaged in cleanup work after Hurricane Hugo from 1989 to 1992.

g. Cleanup involved picking up and removing asbestos debris, insulating materials and depositing them in a pickup truck, which created substantial amounts of dust.

Ex. B Mot. *In Limine* to Exclude (Dr. John's 2/28/22 Report).   Jerome Spear's

report included the following findings considered by Dr. John:

a. Documents reviewed indicate that during the approximate years of 1965 to 1983, asbestos-containing materials were used at the HOVIC refinery.

b. Asbestos cloth and blankets were generally used around the heaters for the purpose of insulating for fire.

c. Bulk samples collected (1982-1999) from insulation materials used in the

refinery indicate a prevalence of amosite and chrysotile asbestos throughout the facility.

d. Asbestos abatement records for the Hess Oil St. Croix refinery from 1995-99 timeframe further demonstrate the vast amounts of asbestos insulation used at the refinery, including the terminal area and tank fields.

e. Plaintiff was exposed to asbestos when helping to clean-up insulation debris in the terminal area of the refinery after Hurricane Hugo, as a bystander from being in close proximity to other workers, and when replacing asbestos-containing gaskets and packing in the terminal area.

f. Plaintiff was subject to secondary exposure from wearing contaminated clothing.

Opp. to Mot. *In Limine* to Exclude, p 6 n 26 (Ex. 2 Opp. to Mot. to Exclude Testimony of Jerome Spear [Spear's Report – 2/22/22, pp 19 – 21, 62]). Dr. John opined that Plaintiff "has evidence of asbestos related lung disease consisting of bilateral parenchymal fibrosis diagnostic of asbestos and bilateral pleural disease diagnostic of asbestos related pleural disease." Ex. A Mot. *In Limine* to Exclude (Dr. John's 2/22/22 Report).

¶6 Contrary to Defendants' assertion, Dr. John's report did not rely solely on Plaintiff's description to determine Plaintiff's exposure to asbestos. He also determined Plaintiff's exposure through review of Jerome Spear's report, his physical examination of Plaintiff which included a pulmonary test and a review of Plaintiff's medical records. Ex. A, Opp. to Mot. *In Limine* to Exclude (Deposition of Dr. John, 3/3/22, pp 14, 35-36, 78-79). Also contrary to Defendants' assertion,

the evidence listed above was sufficient to conclude that Plaintiff was exposed over a prolonged period of time and was in close contact to asbestos. Plaintiff's failure to tell his doctors that he believed he had asbestos exposure does not alter the evidence of his exposure. Such evidence went beyond assumptions. It was corroborated through evidence of pleural plaques in Plaintiff, Dr. John's examination, and Jerome Spear's report which considered documents verifying Defendants' use of asbestos containing materials and Defendants' asbestos abatement records.

¶7 Further, Dr. John agreed that "the dose of asbestos required to induce pulmonary fibrosis is relatively high, and usually acquired over at least several years of exposure in the workplace." Ex. A (Dr. John's Deposition 3/3/22) p 15, Opp. to Mot. *In Limine* to Exclude. He also explained that "I think that some patients seem to be prone to develop features of asbestosis with what appears to have been a lesser exposure than the classic literature would suggest. So I think there's a degree of individual response to these fibers, but in general, you would expect them to have a significant exposure over a prolonged period of time." Id. In light of this, Defendants' argument that Dr. John could not confirm that the dust to which Plaintiff was exposed contained asbestos, and that he did not include an analysis of dosage, are factors that impact the weight to be attributed to his

testimony rather than its admissibility. Under the circumstances, the Court finds the principles and methodology applied by Dr. John to be reliable even if one may disagree with his conclusions. See Daubert, 509 U.S. at 595 ("the focus . . . must be solely on principles and methodology, not on the conclusions that they generate."). He considered sources beyond Plaintiff's statements as explained above. Dr. John performed a qualitative-type analysis and made reasonable calculations since performing a precise quantitative one was impossible. His approach is not unique and has been found reliable by other courts as explained below.

¶8 The United States District Court of Pennsylvania upheld a similar methodology in In re Asbestos Prods. Liab. Litig., it held

> When it is impossible to calculate actual exposure levels, the mere fact that an expert makes reasonable calculations to support his opinion is not enough to render that opinion unreliable. Dr. Dyson, using his knowledge and experience, applied an accepted methodology to information garnered from Ms. Larson's medical records, deposition testimony and answers to discovery requests, and reached conclusions that reliably flow from the available data and methodology. To the extent that Defendants believe that Dr. Dyson's calculations are based on inaccurate evidence or otherwise are in error, such concerns can be addressed through cross-examination and/or rebuttal evidence. However, they do not provide a basis for finding his opinions unreliable within the meaning of Rule 702.

714 F. Supp. 2d 535, 545 (E.D. Pa. 2010). Similarly, in In re Asbestos, the United

States District Court in California stated:

> Defendant contends that Dr. Brodkin's methodology, which fails to quantify Mr. Toy's actual exposure from Bendix brakes (or any of the Defendants' products), is unreliable and therefore inadmissible under Rule 702 and *Daubert*. But neither Rule 702 nor *Daubert* precludes qualitative analysis. Rather, the Supreme Court has cautioned that the *Daubert* inquiry is intended to be flexible, and that when evaluating specialized or technical expert opinion testimony, "the relevant reliability concerns may focus upon personal knowledge or experience." *See* Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). . . Defendant first cites to the California Supreme Court's opinion in Rutherford v. Owens Illinois, Inc., regarding the proof of causation required in asbestos-related cases. (citations omitted). But nothing in Rutherford demands that a plaintiff create a dose assessment in order to establish causation.

2021 U.S. Dist. LEXIS 58479, No. 19-cv-325-HSG, at *16 - 17 (N.D. Cal. Mar. 26, 2021). Finally, in Baldonado v. Wyeth, the United States District Court admitted testimony premised upon the expert's reliance on symptomology in the absence of measurement levels. It stated:

> Although Dr. Naftalis relies on a "qualitative evaluation," rather than a quantitative assessment, Defendant offers no persuasive reason to suggest that her qualitative analysis lacks reliability for purposes of admissibility under *Daubert*, citations omitted ("Even though we didn't have a measurement of levels, we know from her symptomology, and we know from the fact that she didn't have withdrawal bleeding.").

2012 U.S. Dist. LEXIS 74843, No. 04 C 4312, at *45 – 46 (N.D. Ill. May 31, 2012). This Court thus concludes that the entirety of Defendants' attack on the adequacy of the data relied upon by Dr. John goes to weight and raises issues for the jury to

determine. <u>FTC v. Innovative Designs, Inc.</u>, 2019 U.S. LEXIS 72108, No. 2:16-cv-1669, at *6-7 (W.D. Pa. 2019) (stating, "moreover, challenges to the factual foundation of expert opinions such as the ones raised by FTC go to the weight of such testimony which is more appropriately addressed through cross-examination at trial."). There is a sufficient factual basis in the record to support Dr. John's conclusions and hence his testimony should not be excluded.

### B) <u>The Failure To Perform a Differential Diagnosis Does Not Warrant Exclusion of Dr. John's Testimony</u>.

¶9    Defendants assert that Dr. John failed to complete a differential diagnosis to verify his initial assessment. Mot. *In Limine* to Exclude, p 8. They argue that such a diagnosis was required to rule out other potential causes of Plaintiff's symptoms such as asthma and obesity. <u>Id</u>. at 9. Dr. John, they assert, failed to complete a CT scan or administer a methacholine test to verify his conclusions. <u>Id</u>. at 10.

¶10    At the outset, the Court notes that a differential diagnosis analysis "is not required to satisfy <u>Daubert</u>." <u>Sampson v. Carnival Corp.</u>, 2016 U.S. Dist. LEXIS 178168, No. 15-2439-Civ-KING/TORRES, at *18 (S.D. Fla. Dec. 16, 2016). The Arizona district court so found in <u>Ericson v. City of Phoenix</u>. It stated:

> Thus, City Defendants argue that because Ms. Downing cannot rule out other causes of Decedent's death through a differential diagnosis, her testimony should be excluded. While "a reliable differential

> diagnosis passes muster under Daubert," (citations omitted), City Defendants cite to no case law indicating that Daubert requires a reliable differential diagnosis. While a differential diagnosis may muster more credibility, general causation testimony regarding a potential cause of death may still be helpful to a jury in certain cases— and, therefore, be admissible. As relevant here, Ms. Downing will opine that certain forms of strangulation are capable of causing the injuries suffered by Decedent. The Court finds Ms. Downing's testimony to be helpful and, thus, relevant.

2016 U.S. Dist. LEXIS 52641, No. CV-14-01942-PHX-JAT, at *16-17 (D.C. Ariz. Nov. 2, 2016). Of significance here is Dr. John's testimony that the most common manifestation of asbestos exposure is pleural plaque; and "asbestos, as I say, is considered to be the primary source of pleural plaque." Ex. A, p 107-08 (Dr. John's Deposition – 3/3/22), Opp. to Mot. *In Limine* to Exclude. He further explained that he wanted to do a test to rule out asthma (i.e., the methacholine test) but Plaintiff could not complete it. Id. at 122. The purpose was to rule out the shortness of breath, but he did not think it would have any impact of Plaintiff's radiological features. Id. at 123. If a test came back negative for asthma, he explained, it would be a separate diagnosis as Plaintiff has more then one disease process causing shortness of breath. However, Dr. John concluded, that would not cause pleural changes or parenchymal changes. Id. at 123-24. See, Brathwaite v. Xavier, 71 V.I 1089, 1098-99 (V.I. 2019) (stating, "even to the extent that the negative test results can be said to conflict with Dr. Weisher's opinions based on Brathwaite's

subjective complaints, the existence of conflicting evidence does not render the opinions inadmissible. Rather, Brathwaite was entitled to have the jury weigh for itself the apparently conflicting evidence and reach its own determination as to the credibility of Dr. Weisher's conclusions.). Under these circumstances, the absence of an asthma test does not impact the reliability nor admissibility of Dr. John's conclusions. Further, Dr. John explained that "based on the ILO recommendations, you know, they haven't standardized the CT findings, and so we're stuck with using an x-ray to make the diagnosis." Id. at 125. The failure to conduct a CT test is thus not contrary to industry practice, nor Dr. John's methodology.

¶11 Defendants cites to Pritchard v. Dow Agro Scis., 705 F. Supp. 2d 471, 491 in support of their assertion that "Dr. John's failure to employ standard alternative assessment methodologies such as a CT scan or methacholine test merits his exclusion." Mot. In Limine to Exclude, p 10. At best, Pritchard stands for the proposition that "an expert must rule out obvious alternative causes and address the plausible alternative causes proposed by a defendant, explaining why the initial opinions remain reliable in light of the proposed alternative causes." Id. at 490-91. However, this is what Dr. John did. He acknowledged that asthma or obesity could cause shortness of breath. He nevertheless explained that his

conclusion linking pleural plaques to asbestosis remains. Further, even the Pritchard court stated that it was error to exclude expert testimony on the basis that an expert failed to rule out "all" alternative possible causes when conducting a differential diagnosis. Id. at 490. Dr. John's methodology was thus scientifically sound.

## CONCLUSION

¶12 Defendants do not challenge Dr. John's qualification as an expert. Instead, they challenge the reliability of his conclusions, the methodology employed and the sufficiency of his factual basis. For the reasons mentioned above, this Court concludes that Dr. John's testimony is based on scientific knowledge and will assist the jury in determining the cause of Plaintiff's symptoms. The Court further finds that his conclusions are based upon a legally sufficient factual foundation and is derived from reliable and scientifically sound principles and methods which he applied to the facts. In short, his testimony rests on good grounds and should be tested via the adversary process rather than excluded. Accordingly, Defendant's Motion to Exclude Dr. Christopher John's Testimony will be denied. An order consistent herewith will be issued contemporaneously.

DATED: April 20, 2022

ALPHONSO G. ANDREWS, JR.
Superior Court Judge

ATTEST:
Tamara Charles
Clerk of the Court

By: _Paula Clayton_
Court Clerk III
Date: _4/20/2022_