IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**

April 25, 2022 05:04 PM
SX-2006-CV-00231
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

|  |  |
|---|---|
| KADAR MOHANSINGH,<br><br>       **Plaintiff,**<br><br>  v.<br><br>HESS CORPORATION and HESS OIL VIRGIN ISLANDS CORPORATION,<br><br><br>       **Defendants.** | **CIVIL NO. SX-06-CV-231**<br><br>**Complex Litigation Division**<br>**(Grouped under SX-15- CV-198)** |

**Cite as: 2022 VI Super 48U**

**MEMORANDUM OPINION**
**(Filed April 25, 2022)**

**Andrews, Jr.,** *Judge*

## INTRODUCTION

¶1 Plaintiff brings this action for damages against defendant Oil Refinery Companies. He alleges, during his employment, Defendants negligently exposed him to toxic substances which caused him to suffer disease and illnesses. Defendants Hess Corporation and Hess Oil Virgin Islands Corporation now move this Court to exclude expert testimony by Plaintiff's industrial hygienist at the trial in this matter. They claim the hygienist's methodology is unreliable and his testimony does not fit the facts of the case. Plaintiff contends otherwise. For the reasons mentioned below, this Court will deny Defendants' Motion to Exclude.

## PROCEDURAL BACKGROUND

¶2    On March 14, 2006, plaintiff Kadar Mohansingh commenced this action for negligence and other tort claims against defendants Hess Corporation (Hess), Hess Oil Virgin Islands Corporation (HOVIC), Litwin Corporation and Universal Oil Products.[1]  On March 18, 2022, defendants Hess and HOVIC filed the instant Motion *In Limine* to Exclude the testimony of plaintiff's expert, Jerome Spear, an industrial hygienist, and any evidence related thereto.   Defendants requested a Daubert hearing on their motion. Mot. *In Limine* to Exclude, p 14. Plaintiff opposed the motion on March 25, 2022.   Defendants filed their reply on April 1, 2022.   No hearing was held on the motion.[2]

## RELEVANT FACTS

¶3    Plaintiff alleged, during his employment with Defendants, he was continuously exposed to asbestos products and other toxic substances due to Defendants' negligence. Complaint, p 2.   As a result of such exposure, he further alleged, he developed an asbestos-related disease. Complaint, p 3.   To support his claim, Plaintiff retained the services of Jerome E. Spear, a Certified Industrial Hygienist, Certified Safety Professional and Fellow of the American Industrial

---

1 Litwin Corporation and Universal Oil Products have since been dismissed from this action.
2 Since the Court is not excluding the challenged expert testimony, no hearing is required.
  Samuel v. United Corp., 64 V.I. 512, 526 (V.I. 2016).

Hygiene Association. Ex. A Mot. *In Limine* to Exclude, (Spear's Report). Based on his review of Plaintiff's work history, occupational activities, evidence of exposure, documents and materials in Plaintiff's case, relevant scientific literature, and information generally relied upon by industrial hygienists, Spear made the following conclusions within a reasonable degree of scientific certainty:

1) Plaintiff was exposed to asbestos when helping to clean up the insulation debris in the terminal area of the HOVIC refinery as a result of Hurricane Hugo in 1989.

2) Plaintiff had bystander exposure to asbestos from being in close proximity to other workers sawing and grinding asbestos cement pipe in the terminal area of the HOVIC refinery.

3) Plaintiff had bystander exposure to asbestos from being in close proximity to insulators removing, installing, and/or otherwise disturbing asbestos-containing thermal system insulation (TSI) in the terminal of the HOVIC refinery.

4) Plaintiff had direct exposure to asbestos when replacing asbestos-containing gaskets and packing in the terminal area.

5) Plaintiff's direct and bystander exposure likely resulted in contamination to his clothing. Secondary exposure from wearing contaminated clothing contributed to his overall asbestos exposure.

6) Plaintiff was not adequately warned of the dangers of asbestos exposure, including its ability to cause an asbestos-related disease.

7) Plaintiff's exposure to TSI, cement pipe, gaskets, and packing were significant sources of his exposure to asbestos. Asbestos released from these products increased his dose, which in turn, significantly increased his risk of contracting an asbestos-related disease.

Id. at 1, 62.

## LEGAL STANDARD

¶4 Defendants' motion requires this Court to determine the admissibility

of proposed expert testimony. The admissibility of expert testimony in the Virgin

Islands is governed by the Virgin Islands Rules of Evidence which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise
> if:
> **(a)** the expert's scientific, technical, or other specialized knowledge will
> help the trier of fact to understand the evidence or to determine a
> fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the
> facts of the case.

V.I.R.E. 702. In Daubert v. Merrell Dow Pharms., Inc., the United States Supreme

Court established the standard for determining admissibility of expert testimony

under identical Federal Rule of Evidence 702. It instructed that:

> The trial judge must determine at the outset … whether the expert is
> proposing to testify to (1) scientific knowledge that (2) will assist the
> trier of fact to understand or determine a fact in issue. This entails a
> preliminary assessment of whether the reasoning or methodology
> underlying the testimony is scientifically valid and of whether that
> reasoning or methodology properly can be applied to the facts in
> issue.

509 U.S. 579, 592-93 (1993). To determine whether proposed testimony is based

on reliable reasoning or methodology the Supreme Court listed the following non-

exhaustive factors:

    a. whether the opinion can be (and has been) tested;
    b. whether the theory or technique has been subjected to peer review and publication;
    c. what the known or potential rate of error is; and
    d. the existence and maintenance of standards controlling the technique's operation.

Id. at 593-94.   In 2016, the Virgin Islands Supreme Court concluded that "the Daubert standard represents the soundest rule for the Virgin Islands." Antilles School, Inc. v. Lembach, 64 V.I. 400, 420 (V.I. 2016).   They adopted it as "the more liberal standard" that should govern admission of expert testimony in the Virgin Islands. Id. at 421.   Hence, courts construe the rule broadly in favor of admissibility.

¶5     When faced with a motion to admit or exclude expert testimony, the trial judge is tasked with ensuring that the proffered expert testimony rests on a reliable foundation and is relevant to the task at hand. Daubert, 509 U.S. at 597. In order for expert testimony to be admissible, three requirements must be met:

    1) the expert must be qualified;
    2) the expert's opinion must be derived from a reliable process or technique; and
    3) the testimony must assist the trier of fact, that is, it must "fit" the facts of the case

Gerald v. R.J. Reynolds Tobacco Co., 2018 V.I. LEXIS 119, No. ST-10-CV-631, 692, at *1 - 2 (V.I. Super. Ct. June 12, 2018) (quoting In re Catalyst Litigation, 55

V.I. 30 (Super. Ct. 2010). The proponent of expert testimony bears the burden of establishing admissibility requirements by a preponderance of the evidence. Daubert, 509 U.S. at 593, n. 10. Whether to conduct a hearing on a Daubert issue lies within the court's discretion and no hearing is required if the court decides not to limit or exclude the expert testimony. Samuel v. United Corp., 64 V.I. 512, 526 (V.I. 2016); Schrader v. Juan F. Luis Hosp. & Med. Ctr., 2016 V.I. LEXIS 236, No. SX-12-CV-066, at *8 - 9, (Super. Ct. Oct. 6, 2016).

¶6    The proposed testimony must qualify as scientific knowledge to meet the standard of evidentiary reliability. Thus, "proposed testimony must be supported by appropriate validation—i.e. 'good grounds,' based on what is known." Daubert, 509 U.S. at 590. Such testimony should hence be admitted "as long as the expert has 'good grounds' to hold a particular opinion." Lee v. United Corp., 2010 V.I. LEXIS 58, No. ST-98-CV-598, at *6, (Super. Ct. Aug. 17, 2010). The Court need not conclude that the expert's testimony is correct. Instead, "the focus, of course, must be solely on principles and methodology, not on the conclusions they generate." Daubert, 509 U.S. at 595. In this regard, "the judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co. v Carmichael, 119 S. Ct. 1167, 1176 (1999).

## LEGAL ANALYSIS

¶7 The opinion of Jerome Spear, Plaintiff's industrial hygienist, can be summarized as follows:

a. Plaintiff had direct and bystander exposure to asbestos through various means during the course of his employment at the Hess refinery; and

b. Plaintiff was not adequately warned of the dangers of asbestos exposure.

Ex. 2 Opp. (Spear's Opinion, 6.0). Defendant argues that Spear's methodology is unreliable because he failed to make any attempt to quantify Plaintiff's level of exposure to asbestos (dose reconstruction); and the methodology offered as a substitute for a quantitative analysis is unscientific, conclusory, and nothing more than subjective belief and speculation. Mot. *In Limine* to Exclude, p 4. Defendant further argues that Spear's testimony does not fit the facts of the case. Id. at 7. This Court finds that Spear's testimony meets the Daubert standard.

1) The Absence of a Quantitative Analysis Regarding the Level of Asbestos Exposure Does Not Render Spear's Opinion Unreliable.

¶8 Defendants' attack on Spear's testimony focuses heavily on his failure to conduct a quantitative analysis of Plaintiff's alleged exposure to asbestos. Such an analysis would obviously require the use of relevant exposure data. Here, Spear did not calculate any dosage of Plaintiff's exposure data due to the

absence of such data. He explained that he was unaware of any asbestos exposure data conducted or collected at the refinery which he would need to estimate Plaintiff's long-term annual exposure and stated, "but I don't have that data." Ex. 1 Opp. (Spear Deposition, p 85). Thus, Spear should not be faulted for not conducting a dosage analysis.

¶9 In Sanders v. CSX Transp., the Georgia District Court concluded that the plaintiff did not have to show the actual level of exposure since the defendant, the only plausible source of such information, failed to preserve the data. Sanders v. CSX Transp., 2000 U.S. Dist. LEXIS 22707, No. CV5990-209, at *124 (S.D. Ga. Feb. 24, 2000). It reasoned that:

> It does not follow, however, that as a matter of law, a plaintiff should always bear the burden of production regarding the level of exposure to asbestos at a defendant's work site. Indeed, a plaintiff could not ordinarily produce data regarding the level of workers' exposure to asbestos unless the defendant took air samples measuring asbestos levels during the relevant time period. If a defendant *failed* to take air samples during the period concerned, however, it hardly makes sense to oblige a plaintiff to produce non-existing data. In such a scenario where a defendant railroad failed to take air samples measuring asbestos exposure levels or, if it did, but failed to preserve records memorializing the results of such samples -- a jury is entitled to infer that the level of exposure to asbestos, *in fact,* exceeded the amount allowable under the relevant TLV, and thus, that the defendant breached its duty of care to the plaintiff.

Id. at 25 - 16. Further, other courts have concluded that a quantitative analysis is not required particularly in asbestos-type cases. See Vedros v. Northrop Grumman

Shipbuilding, Inc., 2015 U.S. Dist. LEXIS 82672, No. 11-1198 SECTION: "J" (4), at * 8 - 9 (E.D. La. June 25, 2015) (stating "experts in the field of risk and causation in asbestos cases are not required to rely on specific calculations of the exact dosage or level of asbestos to which a plaintiff was allegedly exposed. . . when a plaintiff has proven sufficient evidence to raise a genuine issue of material fact regarding his exposure to asbestos, the plaintiff's experts are not required to prove the specific levels of asbestos concentrations in a defendant's products"); Payne v. CSX Transp., Inc., 467 S.W. 3d 413, 457 (S. Ct. Ten. 2015) (stating "stated simply, the Plaintiff's experts were not required to establish 'a dose exposure above a certain amount' before they could testify about causation. So long as a qualified expert can offer an opinion, based upon reliable data, that will substantially assist the trier of fact, the expert's testimony should be permitted.").

In In re Asbestos, the United States District Court in California stated:

> Defendant contends that Dr. Brodkin's methodology, which fails to quantify Mr. Toy's actual exposure from Bendix brakes (or any of the Defendants' products), is unreliable and therefore inadmissible under Rule 702 and *Daubert*.  But neither Rule 702 nor *Daubert* precludes qualitative analysis.  Rather, the Supreme Court has cautioned that the *Daubert* inquiry is intended to be flexible, and that when evaluating specialized or technical expert opinion testimony, "the relevant reliability concerns may focus upon personal knowledge or experience." *See* Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). . .  Defendant first cites to the California Supreme Court's opinion in Rutherford v. Owens Illinois, Inc., regarding the proof of causation required in asbestos-related

cases. (citations omitted). But nothing in <u>Rutherford</u> demands that a plaintiff create a dose assessment in order to establish causation.

2021 U.S. Dist. LEXIS 58479, No. 19-cv-325-HSG, at \*16 - 17 (N.D. Cal. Mar. 26, 2021). This Court, thus, concludes that Spear was not required to conduct a quantitative analysis in order to render a reliable opinion.

¶10 In formulating his opinion Spear relied on: numerous documents from Hess Oil Refinery - St. Croix; Plaintiff's Deposition Transcript (10/28/14); Spear's interview of Plaintiff on February 4, 2022; and a video deposition of HOVIC employee Alfred S. Browne. <u>Id</u>. at 1 - 4. He reported that the methodology he employed is consistent with generally accepted industrial hygiene practices. <u>Id</u>. at 4. Spear summarized Plaintiff's work history and evidence of exposure. He also summarized scientific literature pertaining to exposure to asbestos fibers and duct. <u>Id</u>. His conclusions were based on facts and conditions related to the case as well as Spear's professional experience, training and education in industrial hygiene. <u>Id</u>. at 5. He considered: scientific literature revealing that pipe and block thermal insulation systems containing significant amounts of asbestos have been used commercially since before World War II; that HOVIC used asbestos-containing materials from 1965 to 1983 based on invoices and shipping documents in the terminal area where Plaintiff worked; and that samples collected from insulation materials used in the refinery indicate the prevalence of asbestos

throughout the facility. Id. at 19 - 23. A review of Spear's report reveals a comprehensive, methodical, scientific qualitative analysis of Plaintiff's work history, the prevalence of asbestos-containing materials and Plaintiff's exposure thereto, HOVIC's policies and procedures, and relevant scientific literature. This Court finds the methodology employed by Spear to be sound and that his conclusions are reliable despite the absence of a quantitative analysis of Plaintiff's level of asbestos exposure.

   2) Spear's Testimony Fits the Fact of the Case.

   ¶11  Defendants argue that Spear's testimony does not fit the facts of this case and is irrelevant since among other things:

   a. he did not ascertain Plaintiff's proximity to others regarding Plaintiff's bystander exposure;

   b. he does not know the duration of Plaintiff's exposure;

   c. he does not know the frequency of Plaintiff's exposure to alleged asbestos-containing materials;

   d. he assumed that all of Plaintiff's encounters with asbestos products actually released respirable asbestos fibers;

   e. he failed to quantify actual ambient background levels of exposure to which Plaintiff would have been exposed or the levels associated with the activities he claimed constituted significant exposure;

   f. He failed to assess wind conditions at the refinery which would have decreased the risk of exposure;

g. he relied on studies involving indoor, as opposed to outdoor, exposure; and

h. he failed to quantify Plaintiff's exposure scenarios and compare them to published literature or other air monitoring at the refinery using time weighted averages.

Id. at 7 - 13.   These factors do not make Spear's testimony unreliable and in some instances Defendant's factual assertions are contradicted by evidence.

¶12    Spear testified that bystander exposure within five (5) feet is similar to direct exposure, i.e., someone directly handling the material. Ex. B Mot. *In Limine* to Exclude (Spear Deposition, p 108).   He further testified that one can have bystander exposure beyond five (5) feet and up to thirty (30) feet, however, the concentration of exposure decreases. Id. at 109.   His report indicates that Plaintiff explained that at times he would "pass by contractors work[ing] on insulated pipe, including tearing off the insulation." Ex. 2, p 7.   A jury could easily conclude, based on these facts, that Plaintiff had bystander exposure of well under thirty (30) feet. Therefore, Defendants' argument regarding knowledge of the actual distance goes to weight.   Similarly, Defendants' argument concerning the duration and frequency of Plaintiff's exposure to asbestos goes to weight.   The fact is that Plaintiff and his co-workers testified that post-Hugo clean-up of insulation was a daily occurrence for three to four months. Ex. 1 Opp. (Spear's Deposition, p 105). As such, the absence of duration and frequency specificity does not preclude

admission of the testimony. Spear's alleged failure to quantify ambient background levels of exposure, to assess wind conditions, or compare Plaintiff's exposure scenarios to published literature, is likewise a non-factor relative to admissibility. Statistics necessary to conduct such analyses, as previously mentioned, were nonexistent. On the other hand, there is ample evidence in the record that significant amounts of asbestos-containing materials were at the refinery. This includes:

a. documents evincing the use of asbestos-containing materials from 1965 to 1983;

b. bulk samples collected between 1982 to 1989 from insulation materials used at the facility indicating a prevalence of amosite and chrysotile asbestos throughout the facility; and

c. asbestos abatement records for the refinery from 1995 to 1999.

Ex. 2 Opp. (Spear's Report, pp 19 - 20). Proof that all of Plaintiff's encounters with asbestos products actually released respirable asbestos fibers is not necessary to support Spear's conclusion that Plaintiff had direct and bystander exposure to asbestos during the course of his employment at the refinery. Under the circumstances here, this Court concludes that Spear's testimony quite fits the facts of this case. Defendants' arguments are matters more suited for cross examination and do not make Spear's conclusion unreliable.

## CONCLUSION

¶13    Defendants do not challenge Spear's qualification as an expert; nor do they challenge his opinion that Plaintiff was not adequately warned about exposure to asbestos.   Instead, they challenge the reliability of the methodology Spear used to render conclusions regarding Plaintiff's asbestos exposure and the fit of his conclusions to the facts of this case.   This Court's task is to judge the admissibility of Spear's testimony, not its credibility.   The focus is solely on principles and methodology, not on the accuracy of conclusions generated by Spear.   For the reasons mentioned above, this Court concludes that Spear's testimony is based on scientific knowledge and will assist the jury in determining whether Plaintiff was exposed to asbestos during his employment and, if so, to what extent.   The Court further finds that his conclusions are based upon a legally sufficient factual foundation and is derived from reliable and scientifically sound principles and methods which he applied to the facts of this case.   In short, his testimony rests on good grounds and should be tested via the adversary process rather than excluded.   Accordingly, Defendant's Motion to Exclude Jerome Spear's Testimony will be denied.   An order consistent herewith will be issued contemporaneously.

_____
ALPHONSO G. ANDREWS, JR.
Superior Court Judge

ATTEST:
Tamara Charles
Clerk of the Court

By: _____
       Court Clerk III

Date: April 25, 2022